UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:08-CR-318-T-27TGW

CHARLES JACKSON FRIEDLANDER

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR NEW TRIAL**

The United States of America, by and through undersigned counsel, hereby files its response to the defendant's Motion for New Trial (Dkt No.163), and would assert that the defendant's motion must be denied for the reasons set forth below:

In his Motion for New Trial, the defendant seeks a new trial on the bases that: 1) the Court allowed the government to introduce 404(b) evidence, 2) the defense sent a defense exhibit, which was not admitted as evidence, to the jury, 3) the Court gave the jury legally accurate, modified pattern jury instructions, 4) the Court denied the defense the ability to play a country music video in its closing arguments, and 5) the defendant's expert erred and the government was mistaken about the date of publication of a book.  None of the bases proffered by the defendant are legally sufficient bases upon which to premise a new trial.

## I.  THE COURT PROPERLY ADMITTED 404(B) EVIDENCE AT TRIAL AND THE DEFENDANT HAS NOT ESTABLISHED ANY ERROR IN THE ADMISSION OF SAME

The defendant in this case was proven to have engaged in a series of internet chats, emails and phone calls in which he discussed wanting to engage in unusual and sexually deviant behavior consisting of sadomasochistic and sexual abuse of two little boys.  Pretrial, the defendant argued that evidence showing that the defendant was interested in this type of activity, in the form of various chats, emails and photos which discussed or depicted sadomasochistic activities should not have been admitted. The Court rejected the defendant's arguments in part and held that the evidence was admissible under Rule 404(b).  The other emails and photographs and evidence that the defendant had on his computer which showed his interest in sadomasochistic abuse was clearly relevant to establishing the defendant's intent in this case.  In the case sub judice, the defendant wanted to engage in the torture and sexual abuse of children using razor strops, and wanted to tie the children up first.  Certainly evidence which showed the defendant had this interest, was clearly relevant and admissible.

The Court ruled pretrial however, that evidence that the defendant engaged in phone calls and internet chats with yet another detective about sexually abusing his young daughter, during the very same time frame as the underlying case, could not be admitted during the government's case in chief, but the Court advised the defendant if he opened the door to same, the Court would reconsider it's ruling as the evidence was directly relevant and illustrative of the defendant's intent in wanting to sexually abuse children.  At the trial in this matter, the defendant took the stand and proceeded to feign ignorance and confusion when asked directly about his interest in sexually abusing

children.  Clearly, the defendant's intent was at issue and the defendant further highlighted his intent when he took the stand, and evidence of his interests was clearly admissible.  The defendant knew the risk attendant with taking the stand and lying about how he didn't intend to have sex with and the admission of the chats the defendant had with the second detective was clearly relevant, admissible and proper.

The defendant cites the case of United States v. Williams, 816 F.2d 1527 (11th Cir. 1987) in support of his contention that 404(b) evidence should have been excluded in the case sub judice, however, the Williams opinion actually supports the admission of the evidence.  In Williams, the defendant,  who was convicted of assault with a dangerous weapon, appealed the trial admission of 404(b) evidence of two prior rapes. In affirming the admission of the 404(b) evidence, the Eleventh Circuit noted that a trial court is afforded broad discretion in determining the admissibility of evidence; and, its determination will not be disturbed absent a clear showing of abuse.  Williams, 816 F.2d at 1531, *citing* United States v. Dothard, 666 F.2d 498, 501 (11th Cir. 1982).  After noting that 404(b) evidence was admissible to show intent, the Williams court discussed the two part test to use in determining the admissibility of Rule 404(b) evidence from the leading case interpreting Rule 404(b): United States v. Beechum, 582 F.2d 898 (5th Cir. 1978)(in banc), cert. denied, 440 U.S. 920 (1979).

In Beechum, the court noted that the first part of the test, was whether the extrinsic evidence was relevant to some issue other than the defendant's character. Under Rule 401, relevant evidence is evidence which makes the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.   The defendant in the Williams case,

3

argued that evidence of the prior two rapes was not properly admitted against him at trial, because his intent to commit the assaults was not at issue and that rape was not so similar to assault with a dangerous weapon as to satisfy the Beechum test for relevancy.  The Williams court disagreed on both contentions and found that the defendant's intent was at issue and that the rapes were sufficiently similar to the assaults to be relevant to his intent.  In discussing the similarity of the extrinsic acts with the charged crimes, the Williams court noted that the extrinsic acts must be similar enough to the two assaults to be probative of intent.  After comparing the facts of the prior rapes with the assaults, the court found the required similarity.

In the present case, incredulously, in paragraph fourteen of his motion, the defendant argues that his chats with the Port St. Lucie detective in which he discussed meeting to have sex with the detective's minor daughter were materially different from the chats that the defendant had with the Pinellas County detective.  However, it is evident that in both chats the defendant wants to engage in illicit sex with a minor child.  In both sets of chats, the defendant engages in specific detailed discussions about his interest in meeting the children for sex and believes he is arranging same through the children's parents.  The fact that the defendant also wanted to beat the boys in addition to having sex with them, doesn't make the chats so materially different at all.  Both sets of chats clearly show the defendant's interest and intent in having criminal sexual contact with children, and the evidence was properly admitted.

The defendant also complains that the evidence was "unduly prejudicial." However, as the Williams court noted, all relevant evidence is inherently prejudicial, and therefore the possibility of prejudice to the defendant always exists. United States v. McRae, 593 F.2d 700, 701 (5th Cir. 1979), *cert. denied*, 444 U.S. 862 (1979).   Citing United States v. Blanton, 793 F.2d 1553, 1564 (11th Cir. 1986) the Williams Court noted that because excluding evidence from the jury's consideration is an exceptional remedy, it is invoked sparingly. Id. At 1532.    Further, the determination of whether an extrinsic offense is of such a heinous nature that it is likely to sway the jury irrevocably to a decision of guilt, lies within the sound discretion of the trial judge and calls for a "common sense assessment of all the circumstances surrounding the extrinsic offense." Williams at 1532, *citing* United States v. Dothard, 666 F.2d 498, 502-03 911th Cir. 1982).  Because the assaults in the Williams case required proof of William's specific intent to do bodily harm, and because the details of the rapes were so similar to the details of the assaults to be reflective of the defendant's intent, the Eleventh Circuit found that the evidence was properly admitted at trial and not unfairly prejudicial.  The court properly ruled that the Rule 404(b) evidence was admissible to show the defendant's intent.  Similarly, in the present case, the defendants communications with the Port St. Lucie detective were strikingly similar to the defendant's chats from the charged offense and were clearly indicative and illustrative of the defendant's intent in wanting to engage in sexual relations with children and such evidence was not unduly prejudicial, but was properly admitted at trial, particularly in light of the defendant taking the stand and claiming he had no intent to have sex with children.

5

## II.  THE DEFENDANT'S OWN MISTAKE IN SENDING AN EXHIBIT TO THE JURY WHICH WAS NOT PROPERLY ADMITTED AS EVIDENCE PROVIDES NO LEGAL BASIS FOR NEW TRIAL

Only one lone paragraph of the defendant's motion for new trial is predicated upon the fact that a simple computer informational report showing the defendant's residence and assets was improperly sent to the jury at trial.  Prior to sending any exhibits to the jury, the clerk reviewed same with the defense counsel, who failed to advise the clerk that Defense Exhibit 47 was not admitted into evidence, and thus, could not go to the jury.  Thus, based on this error by defense counsel the document was sent to the jury.  Despite the fact that the defendant had improperly attempted to move the document into evidence during the trial without any foundation and was denied, the defendant now argues, with no explanation, that the removal of same from the jury room somehow sent a message to the jury that the testimony about the exhibit was not as important as other evidence.   It is counsel for the government's recollection that retrieval of the document by court personnel was unnecessary as the astute jury noticed that it had been given a document that was not properly admitted and gave it back to the courtroom security officer on their own accord.   In any event, counsel for the United States asserts that there was no prejudice, nor could there be any prejudice to the defendant from the document either going to the jury or being taken from the jury as the document itself contained no special information whatsoever.

### III.  THE COURT GAVE LEGALLY ACCURATE JURY INSTRUCTIONS AND THE COURT PROPERLY DENIED THE DEFENDANT'S REQUEST TO USE IMPROPER, INACCURATE PATTERN INSTRUCTIONS

In his motion for new trial, the defendant complains about the jury instructions given, without citation to any legal authority.  The court gave legally accurate jury instructions, and the defendant's request to give the inaccurate pattern jury instructions was properly denied.

### IV.  THE COURT PROPERLY PRECLUDED THE PRESENTATION TO THE JURY OF A COUNTRY MUSIC VIDEO IN THE CLOSING ARGUMENTS

The district court has broad discretion over ruling on closing arguments and will be reversed only if counsel is prevented from making all legal arguments supported by the facts.  United States v. Hall, 77 F.3d 398 (11th Cir. 1996).  In the present case, counsel for the defendant was given the opportunity to argue at length in closing argument and to present all of the legal arguments he wanted to.  What he was precluded from doing, was showing a country music video about a pizza delivery guy, who after delivering pizzas to an ungrateful, insulting customer, gets back in his delivery car, looks at a video screen in his car of country music singer Brad Paisley and exclaims, "I want to be him." The song then begins and discusses about how the pizza delivery guy has various perceived social impairments such as his health, his height and weight, the type of car he drives, and where he lives (with parents), and when chatting on MySpace, a computer website, he lies about being rich and famous, and driving a nice car, etc. which trying to impress girls online.   Certainly, presentation of a humorous country music video about a pizza man misrepresenting his identity online to impress women is a far far cry from a licensed mental heath counselor chatting about

the sexual abuse and torture of children and scheduling a meeting to do so and actually showing up at the meeting. The fact that defendant would seek to equate or compare his case to the country music video is, at the very least, troublesome. The admission of same during closing argument certainly would have undermined courtroom decorum, and the preclusion of same was entirely appropriate.

### V. THE MUTUAL MISTAKE REGARDING THE CORRECT CURRENT DEFINITION OF PEDOPHILIA AND SEXUAL SADISM WAS HARMLESS ERROR AND THE DEFENDANT'S EXPERT TESTIFIED THAT DESPITE THE DIFFERENCE IN LANGUAGE USED, THE ESSENCE OF THE DEFINITIONS REMAINED THE SAME

During the trial in this matter, counsel for the defendant prepared an exhibit which contained type written definitions of the diagnostic criteria for Pedophilia and Sexual Sadism from the Diagnostic and Statistical Manual of Mental Disorders, 4th Edition, DSM-IV-TR. The typed exhibit contained typographical errors and counsel for the government noticed same and compared the diagnostic criteria in her copy of the Diagnostical and Statistical Manual of Mental Disorders,4th Edition, DSM-IV-TM book to the defense exhibit and noted the diagnostic criteria were different. On cross examination, counsel for the United States handed the defendant's expert her DSM-IV and asked the expert, Dr. Fred Berlin, when it was published. Dr. Berlin testified, in error, that the government's book was published and/or revised in 2005. Specifically, Dr. Berlin testified that the government's book was copyrighted 1994, but that it contained a statement that

> "[i]t says correspondence regarding this to be directed to Division of Publications, 2005. So I presume that's it. Again, there are various printings. They go up to January 1995. Copyright here is 1994. But going by what it says here, I presume this was actually put out in 2005, although

8

that's a little bit unclear." (Transcript of Dr. Berlin, excerpt attached, p. 31).

The government followed up by asking, "So this is a more recent book?" (Transcript p. 31)   Dr. Berlin responded, "If that's from 2005, they would be more recent.  That's correct.  Again, I'm not sure if there's others that have come out since then, just to make that clear." (Transcript p. 31).

The government again asked Dr. Berlin to confirm whether the government's book was more recent:

> Ms. Kaiser:  "Dr. Berlin, I'm showing you the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, DSM-IV-TM.  Do you recognize that book? (Transcript of Dr. Berlin, p.32).
>
> Dr. Berlin:  Yes, I do. (Id.)
>
> Ms. Kaiser:  Is this [the government's book] a more recent edition of the same book that you mentioned earlier?
>
> Dr. Berlin:  It would appear to be, Yes.

Believing that the government's copy was more recent, counsel for the United States questioned Dr. Berlin about the differences between the two versions of the Diagnostic and Statistical Manual of Mental Disorders.   In response to questioning by the United States, Dr. Berlin repeatedly testified that despite the change in language between the two versions, the essence of the criteria remained the same.  Thus, despite the mutual mistake of fact, Dr. Berlin's testimony made it clear that any changes

9

between the two were totally unimportant and that the essence of the diagnostic criteria remained the same.  In discussing the differences between the two versions, Dr. Berlin testified :

> "To the best of my belief, there's been no significant changes." p. 33.
>
> ". . . I don't see anything that's standing out at me that looks different in terms of those criteria."  p. 34.
>
> "The wording I'll acknowledge is slightly different.  The intent, the theme, what it is meant to represent is essentially the same." p. 35.
>
> "The wording is somewhat different, but the essence of what it's all about, in my judgment, is precisely the same." p.36.
>
> "Yeah.  Again, these are text revisions so . . . they've changed the words, but there's been no meetings of any subcommittee to change the essence."  p.42.
>
> "The words are different but the meaning is not different."  p.42.
>
> "And so yes, the wording has changed, but the essence of it that there has to be real, not simulated, not fantasy but real behavior of a sadistic nature hasn't changed.  It's presented in a somewhat different fashion.  But given you have both A & B [the defendant's book and the government's book], the essence of what it's all about has not changed." p.44.

"Well, again, there's been no changing of the essence of this by committees meeting and agreeing." p. 45.

"I don't think the essence of what pedophilia is all about has changed." p. 45.

Further, in referring to the government's book, Dr. Berlin testified, "- -this was a text revision that was not made by the people who are on the committees in terms of these conditions. It was never intended to change the meaning of the condition." p. 51. Although Dr. Berlin was misinformed as to which book was most recent, he repeatedly testified that the differences between the books were unimportant and minor and did not change the essence of the diagnostic criteria. He testified, "It may phrase things somewhat differently but were not intended to change the meaning because there have been no meetings of committees to decide whether the meaning should be changed." p.54.

After trial, it was discovered that Dr. Berlin had misread a zip code of "20005" as the year "2005" and it was determined that the government's book actually predated Dr. Berlin's. Despite the difference in the diagnostic criteria between the two, Dr. Berlin testified repeatedly that the essence of the criteria was the same, and the differences were negligible.

The difference between the two versions is seen below:

In the government's book, the DSM-IV, the diagnostic criteria provided:

**- Diagnostic criteria for 302.2 Pedophilia**, **DSM-IV-TM, Page 528:**

A. Over a period of at least 6 months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children (generally age 13 years or younger).

11

B.  The fantasies, sexual urges, or behaviors cause clinically significant distress or impairment in social, occupational, or other important areas of functioning.

C.  The person is a least age 16 years and at least 5 years older than the child or children in Criterion A.

In the defendant's book, the DSM-IV-TR, the diagnostic criterial was as follows:

**DSM-IV-TR, Page 572 - Diagnostic criteria for 302.2 Pedophilia**

A.  Over a period of at least 6 months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children (generally age 13 years or younger).

B.  The person has acted on these sexual urges, or the sexual urges or fantasies cause marked distress or interpersonal difficulty.

C.  The person is a least age 16 years and at least 5 years older than the child or children.

In comparing the two versions, it is easy to note that criteria A & C are exactly the same between the defendant's version and the government's version. Thus, the only difference between the books for pedophilia, concerned subsection (B).

Government's Version:   The fantasies, sexual urges, or behaviors cause clinically significant distress **or** impairment in social, occupational, **or** other important areas of functioning. (emphasis added)

Defendant's Version:   The person has acted on these sexual urges, **or** the sexual urges **or** fantasies cause marked distress **or** interpersonal difficulty. (Emphasis added)

Essentially both say the same thing, although the defendant's version also adds the additional diagnostic criteria of actually acting on the sexual urges. Although there are minor differences between the two, the real focus of the government's inquiry was directed to Dr. Berlin's misreading both books sections to require behaviors to actually be acted out. Despite repeated references to the word "**OR**" in both texts, Dr. Berlin

12

opined at length that where the book said "**OR**" it should be read as "**AND**" which remains a fallousy. (Emphasis added).   However, the issue before the court is whether the mistake by the government and Dr. Berlin and the defense should warrant a new trial, and the answer is simply no.  The testimony as to the diagnostic criteria for pedophilia and sexual sadism was not substantive evidence and was actually irrelevant to the charges.  The defendant was not being charged with being a pedophile or a sexual sadist, and attempts by the defendant to admit Dr. Berlin's opinion that Dr. Friedlander was neither was inappropriate.  Whether Dr. Berlin was or wasn't a pedophile or sexual sadist, didn't have any bearing on whether he used a computer to arrange a meeting to have sex with minors and was irrelevant testimony.

The same minor changes in versions are noted between the diagnostic criteria in the government's book and in the defendant's book for sexual sadism.  In the government's book, the diagnostic criteria for sexual sadism was:

**Diagnostic criteria for 302.84 Sexual Sadism**, **DSM-IV, Page 530**

- A.   Over a period of at least 6 months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving acts (real, not simulated) in which the psychological or physical suffering (including humiliation) of the victim is sexually exciting to the person.

- B.   The fantasies, sexual urges, or behaviors cause clinically significant distress or impairment in social, occupational, or other important areas of functioning.

The diagnostic criteria in the defendant's book was as follows:

**Diagnostic criteria for 302.84 Sexual Sadism,  DSM-IV-TR, Page 574:**

- A.   Over a period of at least 6 months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving acts (real, not simulated) in which the psychological or physical suffering (including humiliation) of the victim is sexually exciting to the person.

  B. The person has acted on these sexual urges with a nonconsenting person, or the sexual urges or fantasies cause marked distress or interpersonal difficulty.

  Again, as Dr. Berlin testified, the essence of both remained the same. Between the two versions, only the second criteria "B" changed to add the basis of a person acting on sexual urges with a nonconsenting person as an additional premise upon which to diagnose sexual sadism.

  The defendant cited no legal authority to support the claim that a mistake of fact committed by it's own expert, and relied upon by the government, should somehow give the defendant a new trial. No law was cited and the government could not find one case in which a defendant was given a new trial, when a simple error had been committed. In a case cited by the defendant, <u>United States v. Able</u>, 469 U.S. 45 (1984), the court upheld a prosecutor's cross examination of a witness about gang membership, and doesn't discuss cross examination of defense experts.

  In paragraph 30 of the defendant's motion, he cites ABA standards of Criminal Justice, Section 3-5.8(b), in support of his argument against prosecutors being witnesses. However, in the present case, the prosecutor did not become a witness and in the jury instructions, the judge again reminded the jury that what the attorneys said at trial was not evidence.

  When the government asked Dr. Berlin whether a newer version of the diagnostic criteria had come out since his book, the government mistakenly believed that to be the case, based upon the discrepancies between the books discovered after seeing the typographical error and comparing it to the DSM book of the government. The government never testified about the age of the book, and the fact that expert

himself, a man whose life's work is premised upon these two books, didn't know which book was which, further supports the observation that this was nothing more than a mutual mistake, on a minor collateral issue.

    Dr. Berlin looked at the dates of the book, and said it was put out in 2005. He was in error. The government didn't know that Dr. Berlin was in error about the date, or it would have corrected same. But the idea that somehow the defendant didn't have an opportunity to address the issue is without merit as it was the defendant's own expert who testified regarding same. Further, the defendant only provided the government with it's version which contained the typographical error during the direct examination of Berlin and had little time to compare the two versions, which prompted the government to repeatedly ask Dr. Berlin which book was more recent on cross examination. Dr. Berlin, the expert who said he sat on the board who made the books, should have testified that the DSM-IV-TM predated the DSM-IV-TR (text revision), and was confused and it is clear that the mistake on both parts was inadvertent and unintentional.

    The case of <u>United States v. Barham</u>, 595 F.2d 231 (5th Cir. 1979), was cited by the Defendant to support his assertion that, "It is immaterial whether false evidence directly concerns an essential element of the crime charged or bears upon the credibility of a witness." (Defendant's Motion para. 31). However the <u>Barham</u> case is inapplicable to the case sub judice. In <u>Barham</u>, the court found that the failure of the prosecution to correct oral testimony which it knew to be false violated due process if there was any reasonable likelihood that the false testimony could have affected the judgment of the jury. *Citing* <u>United States v. Anderson</u>, 5574 F.2d 1347 (5TH Cir. 1978),

the Barham court explained, "the reviewing court must focus on the impact on the jury. A new trial is necessary when there is any reasonable likelihood that disclosure of the truth would have affected the judgement of the jury." Id. At 1356. In Barham, the court went to great lengths to establish factually what had transpired in the Barham case. Essentially a government witness testified falsely that he was given no promises about what would happen with his case from the government after he testified, (and thus had no motive to testify a certain way for the government) and that wasn't factually true, and the witness had been given a deal. Unlike the Barham case, there is no testimony at issue which affected the outcome of the case. If anything the modification between the two versions, based upon the expert's testimony, is of no consequence as it was not intended to change the essence of the earlier version. Further, in Barham, the prosecutor was aware of the promises made, and failed to correct the false testimony on this point. The government in the present case didn't realize the mutual mistake until after trial. Clearly, a reading of the transcript shows the government asked a number of non-leading, open-ended questions of Dr. Berlin regarding which book was more recent. The government did not know about the mistake at trial, and thus, could not correct it.

The defense cites the case of United States v. Runge, 593 F.2d 66 (8th Cir.) *cert. denied*, 444 U.S. 549 (1979) to support the proposition that "if there is any reasonable likelihood that the false evidence could affect a jury's judgment, a new trial must be ordered." However, the Runge case actually supports the government's position that no new trial is warranted.

16

In the Runge case, the court found that in a motion for new trial, a knowing use of perjured testimony required that a conviction be set aside if there was any reasonable likelihood that the false testimony could have affected the judgment of the jury. Id. at 73. The Runge court made it clear that the prosecutor had to actually know the testimony was perjurous and fail to correct same. In the present case, there was no "perjured" testimony. The government and Dr. Berlin were simply mistaken as to the date of a text revision, and there was no purposeful mis-statements made. Thus, the case of sub judice does not fit within the parameters of the Runge opinion. In the cases in which a new trial has been granted, such as Giglio v. United States, the false testimony had to do with promises that were made to a government witness in exchange for his testimony and which were improperly concealed when inquired about a trial. Those situations are vastly different from the case of sub judice. The error in the present case was in no way material. It is completely irrelevant whether the first diagnostic criteria or second diagnostic criteria was used and as Dr. Berlin pointed out that the two versions are essentially the same but are worded differently. Dr. Berlin successfully testified that despite minor revisions, the essence remained the same. Further, as was noted previously, the subject matter of the government's cross examination primarily focused on Dr. Berlin's improper reading the word "or" to mean "and."

Finally, the defendant cites the case of Napue v. Illinois, 360 U.S. 264, 269 (1959) to support its assertion that "a defendant is deprived of due process when false evidence only goes to the credibility of a witness." However, a review of the Napue opinion reveals that this case, as well, does not support the defendant's motion for new

17

trial. In <u>Napue</u>, an important witness for the State in a murder prosecution falsely testified that he had received no promise of consideration in return for his testimony, which was false. The Assistant State Attorney did nothing to correct what he knew to be false testimony. In <u>Napue</u>, the Supreme Court held that the State Attorney's failure to correct what it knew to be false testimony violated due process. The <u>Napue</u> opinion, again, is distinguishable from the case of sub judice. In <u>Napue</u>, the court addresses the knowing use of perjured testimony. There was no perjured testimony in the present case, and the government was unaware of the mistake as was Dr. Berlin. As was shown previously, the mutual mistake concerned an immaterial non-relevant issue. Given the overwhelming evidence against the defendant, and Dr. Berlin's testimony that the criteria in both books was essentially the same, the mutual mistake had no affect on the outcome of the trial, and a new trial is unwarranted.

Federal Rule of Criminal Procedure 33, provides that the court may grant a new trial if required in the interest of justice. The decision to grant or deny a new trial motion is within the sound discretion of the trial judge and will not be overturned on appeal unless the ruling is so clearly erroneous as to constitute an abuse of discretion. <u>United States v. Pedrick</u>, 181 F.3d 1264 (11th Cir. 1999). The appellate court will reverse the lower court's decision granting a new trial if the appellate court's review of the record reveals that the evidence did not preponderate heavily against the jury's verdict. <u>United States v. Cox</u>, 995 F.2d 1041 (11th Cir. 1993). In deciding whether to grant a new trial, the court must evaluate the weight of the evidence. The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand. In the present case, there is overwhelming evidence against the defendant, and the motion for new trial should be denied.

The government asserts that this mutual mistake, concerning the applicable current book criteria for a diagnosis of pedophilia and sexual sadism, is irrelevant as the definitions were a minor collateral issue, which did not implicate the elements of the offense, and the error did not affect the defendant's substantial rights because the overwhelming properly admitted evidence established his guilt. A defendant is entitled to a fair trial, not a perfect one. U.S. v. Adams, 74 F.3d 1093 (11th Cir. 1996)(*citing* Lutwak v. United States, 344 U.S. 604, 619, (1953)).

## VI. **CONCLUSION**

As was demonstrated above, the defendant has not presented a valid basis for his motion for new trial, and the government respectfully asserts that his Motion for New Trial be denied.

        Respectfully submitted,

        A. BRIAN ALBRITTON
        United States Attorney

By:   *s/Amanda C. Kaiser*
      AMANDA C. KAISER
      Assistant United States Attorney
      Florida Bar No. 0083984
      400 North Tampa Street, Suite 3200
      Tampa, Florida 33602
      Telephone: (813) 274-6315
      Facsimile: (813) 274-6103

<u>U.S. v. CHARLES JACKSON FRIEDLANDER</u>          Case No. 8:08-CR-318-T-27TGW

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 23, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

> George E. Tragos, Esquire
> pam@greeklaw.com
> george@greeklaw.com

By:    *s/Amanda C. Kaiser*
AMANDA C. KAISER
Assistant United States Attorney
Florida Bar No. 0083984
400 North Tampa Street, Suite 3200
Tampa, Florida  33602
Telephone:   (813) 274-6315
Facsimile:   (813) 274-6103
E-mail: Amanda.Kaiser@usdoj.gov