## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA**

**vs.**                                           **CASE NO: 8:08-CR-318-T-27TGW**

**CHARLES JACKSON FRIEDLANDER**

_____/

## ORDER

    **THIS CAUSE CAME** before the Court on Defendant's Motion for New Trial (Dkt. 163) and the Government's response in opposition (Dkt. 166). The Court conducted a hearing on February 5, 2009, during which testimony was received and arguments of counsel were considered. At the conclusion of the hearing, the Court orally granted Defendant's Motion for New Trial (Dkt. 163), making findings and conclusions on the record, which are incorporated herein by reference. This Order serves to memorialize that ruling.

    The relevant facts are undisputed. Defendant was convicted after a jury trial of one count of enticing a child to engage in sexual acts in violation of 18 U.S.C. § 2422(b). During the trial, Defendant called as an expert witness Dr. Fred Berlin, Ph.D., M.D., a Board certified Psychiatrist and Associate Professor at Johns Hopkins. Dr. Berlin's clinical specialty is sexual disorders. [1] In his direct examination before the jury, Dr. Berlin relied extensively on the Diagnostic and Statistical Manual of Mental Disorders (DSM IV TR). On cross examination, the prosecutor first had Dr. Berlin confirm that the manual he relied on was the DSM IV TR (Tr. at p. 29). [2] She then asked Dr.

---

[1] Incident to the Government's motion in limine (Dkt. 73), before trial, the Court conducted a *Daubert* hearing relative to Dr. Berlin's proffered trial testimony. As a result, Dr. Berlin was not permitted to testify about internet fantasies, whether Defendant was or was not a pedophile, or what intentions Defendant had when he drove to Tampa from Ft. Myers to have a sexual liaison with two minor boys, after arranging to meet the boys through their ostensible father, an undercover detective. Dr. Berlin was permitted to testify concerning the criteria for diagnosing pedophiles.

[2] Reference is to that portion of the transcript including Dr. Berlin's testimony.

Berlin to confirm the publication date, to which he responded that it was copyrighted in 2000. (Tr. at p. 30). Then, the prosecutor asked this leading question: "Well, you know sir, that the diagnostic criteria had changed since 2000, correct?" (Tr. at p. 30). She essentially asked the same question again (Tr. at p. 30, line 22). The prosecutor then approached the witness and handed him her copy of the DSM, which Dr. Berlin recognized as the DSM IV TM. Dr. Berlin was asked when that manual was published, to which Dr. Berlin responded, "Well, again, I'll have to check. Let's see. Copyright 1994, I believe. It says, correspondence regarding this to be directed to Division of Publications, 2005. So I presume that's it. . . ." The prosecutor then asked, "So this is a more recent book?" Dr. Berlin acknowledged: "If that's from 2005, that would be more recent. That's correct." (Tr. at p. 31). This line of questioning continued (Tr. at p. 32).

After having Dr. Berlin acknowledge that the edition of the DSM manual she presented to him was published "approximately five years after" the edition he had relied on, the prosecutor relentlessly cross examined Dr. Berlin as to why he did not "bring the most recent copy" of the DSM manual:

> Sir, why - - if you knew you were coming here from - - all the way from Johns Hopkins to testify on two topics, why wouldn't you compare the definitions of sexual sadism from 2005 to the most recent book to make sure that they were accurate?

(Tr. at p. 33).

Essentially, the prosecutor destroyed Dr. Berlin's credibility by having him acknowledge that he relied on an outdated edition of the DSM manual, which included different criteria than the "recent" manual. Dr. Berlin had no effective response, other than to try to compare the criteria and reconcile the differences.

The problem, and that which warrants a new trial, is that the prosecutor was mistaken in her belief that her edition of the DSM was the most recent edition. Contrary to her mistaken belief, in

her cross examination of Dr. Berlin, she actually utilized an older edition of the DSM manual, rather than a more recent one. Accordingly, when she implied in her questioning of Dr. Berlin that the criteria for diagnosing pedophilia had changed since 2000, she was wrong. Dr. Berlin was therefore impeached by use of a false premise that the DSM he relied on was outdated and that the criteria for diagnosing pedophilia had since changed.

Shortly after trial, the prosecutor, to her credit, filed the Government's Notice of Mutual Mistake of Fact at Trial (Dkt. 162). Defendant contends in his motion that he was deprived of a fair trial and due process by the prosecutor's admitted error and is entitled to a new trial based on that error. This Court agrees.

The prosecutor's error was not intentional or knowing. That said, as an Assistant United States Attorney, whose "role transcends that of an adversary," the prosecutor should have known which edition of the DSM manual was the most recent, and should not have injected into this trial the false premise that Dr. Berlin, Defendant's retained expert, was relying on an outdated edition and was therefore not aware that the diagnostic criteria had changed, when it in fact had not.[3] Here, Defendant's retained expert's credibility was effectively torpedoed by an unfair and false premise, a responsibility the Government must bear, notwithstanding that it was unintentional and unknowing. *See United States v. Runge*, 593 F.2d 66, 73 (8th Cir. 1979)("The government may be responsible even if the prosecutor did not actually know the testimony was perjured, but should have known."

Even though this is not a case involving the knowing use of false or perjured testimony, it does involve the presentation to the jury of false evidence through the prosecutor's mistaken understanding of the publication date of her own copy of the DSM manual, and her mistaken premise in her questioning of Dr. Berlin that the diagnostic criteria has changed. Her questioning effectively

---

[3] A federal prosecutor's role "transcends that of an adversary." *United States v. Bagley,* 473 U.S. 667, 675 n.6 (1985).

placed false and material evidence before the jury. That false evidence was used to impeach Dr. Berlin and destroy his credibility, thereby irreparably tarnishing the defense. Even false testimony which merely impeaches a witness' credibility may require a new trial. *United States v. Runge,* supra (citing *Giglio v. United States,* 405 U.S. 150, 154 (1972)); *Napue v. Illinois*, 360 U.S. 264, 269 (1959).

Where, as here, the Government's case includes false evidence and the prosecutor should have known of the falsehood, a new trial is warranted "if there was any reasonable likelihood that the false testimony would have affected the judgment of the jury." *United States v. Antone*, 603 F.2d 566, 569 (5th Cir. 1979). Having presided over this trial, and having observed the jury's reaction to the embarrassing and humiliating cross examination of Dr. Berlin, and notwithstanding the compelling and overwhelming evidence of Defendant's guilt, it is impossible for this Court to say with any confidence, that beyond a reasonable doubt, the prosecutor's impeachment of Dr. Berlin and her mistaken use of an outdated DSM manual, did not contribute to Defendant's conviction. *Chapman v. California,* 386 U.S. 18, 26 (1967); *United States v. Suggs,* 755 F.2d 1538, 1540 (11th Cir. 1985). Simply put, the prosecutor's mistake, albeit unknowing, deprived Defendant of a fair trial. Therefore, it is

**ORDERED AND ADJUDGED** that Defendant's Motion for New Trial (Dkt. 163) is GRANTED. Defendant's Renewed Motion for Judgment of Acquittal (Dkt. 164) is DENIED as moot.

**DONE AND ORDERED** in Tampa, Florida this 6th day of February, 2009.

/s/James D. Whittemore
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record
United States Probation