UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 8:08-CR-318-T-27TGW

CHARLES JACKSON FRIEDLANDER

**GOVERNMENT'S RESPONSE TO DEFENDANT'S "RENEWED"
MOTION IN LIMINE TO PRECLUDE THE GOVERNMENT FROM
PRESENTING NUDE OR EXPLICIT PHOTOGRAPHS OF ADULTS AND
INCORPORATED MEMORANDUM OF LAW**

**COMES NOW**, the United States of America, by and through undersigned

counsel, and hereby files its response to the defendant's "Renewed" Motion in Limine to

Preclude the Government from Presenting Nude or Explicit Photographs of Adults

engaging in heterosexual or homosexual activity, acts of bestiality, sadomasochism,

discipline or similar activity before the jury, and Incorporated Memorandum of Law (**Dkt.

No. 184, and previously Dkt. No. 47**).

The defendant's motion was previously filed under Docket No. 47 which the

Court heard argument on and ruled upon before the previous trial.  The government

hereby incorporates its previous response at Docket No. 68 and would state as follows:

[The government notes that the Court can only properly evaluate the relevance and admissibility of certain evidence once it knows the facts surrounding the charged offense. Thus, the government has provided a factual summary of the case so that the court may properly weigh the issues presented.  The government asserts that the defendant's motion is without legal basis and should be denied, for the reasons set forth below:

1.      The defendant has been charged in a one count indictment alleging that he enticed a child to engage in sexual acts by communicating with an undercover officer posing as a "Bad Dad" who would share his two minor sons for sex and sadomasochistic abuse under Title 18, United States Code, Section 2422(b).  The government anticipates that the evidence in the case will show that the defendant corresponded by internet chats with an undercover agent who posed as a thirty-six year old father who had an interest in incest and the physical abuse of children.  The undercover officer's profile was written in cryptic terms commonly used by subjects who shared the same interests.

In his profile, the undercover officer claimed to have a female partner who was also interested in the physical abuse of children and incest, and he claimed to have access to three children, two boys and a girl.  On approximately June 16, 2006, the undercover officer encountered the defendant, CHARLES FRIEDLANDER, a licensed mental health counselor living in Ft. Myers, Florida, in an America On Line (AOL) chat room titled "Strict Parents."  This chat room is a place for subjects with the same interests.  The defendant, using the screen name of "Captoes" (a screen name which FRIEDLANDER later explained referred to "cap toed" shoes) introduced himself as an

2

older, divorced, strict and old fashioned father and he chatted with the undercover

officer regarding the administering of physical punishment to the respective children.

FRIEDLANDER claimed that his son was an adult, but discussed how he used to strike

him with a razor strap and would hit his son as many as forty-five to seventy-five times.

FRIEDLANDER also claimed that he had a friend's grandchildren that would stay with

him on occasion and that he had started with his own son at about age eight and then

progressed toward the razor strap by age eleven.  Between approximately June of 2006

and June of 2008, the undercover officer had no contact with the defendant, CHARLES

FRIEDLANDER.

Approximately two years later to the date,  on June 17, 2008, the undercover

officer again had contact with the AOL user "Captoes" later identified as CHARLES

FRIEDLANDER.  On approximately June 17, 2008, "Captoes" admitted to using a heavy

"Garrison Belt" and "Crop" to strike his son in the past.  The undercover officer

discussed humiliation as a form of punishment as well.  Humiliation is a common type of

child punishment discussed in sadomasochism chat rooms.  FRIEDLANDER again

claimed to have access to his friend's two grandsons and stated that he was very

demanding and strict and that his friend had given him permission for "everything."

FRIEDLANDER claimed that the boys were twelve and fourteen years of age and that

he would be "tearing them up daily."  When asked if he used any special locations or

confinement techniques when administering discipline, FRIEDLANDER replied that he

uses his basement or separate rooms dedicated to discipline lessons and that he has

the subjects "sometimes tied."  During this chat conversation, FRIEDLANDER showed his sadistic and lascivious interest in physically abusing children by telling the undercover officer that he had the children totally stripped when he administered discipline.

On, June 17, 2008, the defendant told the undercover officer that he would like to watch the undercover profile administering discipline.  The defendant discussed with the undercover officer how "they needed to be very discreet."  When the law enforcement officer told the defendant that his undercover profile had friends that shared their interest who preferred to meet at the undercover profile's residence, FRIEDLANDER advised he would like to meet the undercover profile and his friends.  The undercover officer advised FRIEDLANDER that he would have to be approved by the friends before he could visit the group.  FRIEDLANDER told the undercover profile that he was stricter than most and that his "beatings" were very intense.  When asked how he handles marks on his son, FRIEDLANDER replied that his son was home schooled and that he put oil and cream on the marks.  FRIEDLANDER stated that he used to beat his son "daily, hard and long."  FRIEDLANDER advised that he was a believer in "marking" kids and that he paid little attention to when his son would "yell and cry."  FRIEDLANDER asked the undercover profile whether he had "ever used 'a switch in their crack'" and advised that this type of punishment was very effective.[1]

---

[1] Law enforcement was unable to interview the defendant's adopted son as FRIEDLANDER advised that he committed suicide and was deceased.

2.      On June 18, 2008, the defendant engaged in another instant message chat using AOL with the undercover officer in which he again stated his interest in wanting to be accepted by the group of the undercover profile's friends and indicated he had the most interest in working with the undercover profile's two boys believed to be ages ten and eleven.  The defendant told the undercover profile that he would bring his razor strap, Garrison belt and English crop to their meeting.

3.      On June 19, 2008, in another instant message chat, FRIEDLANDER claimed to have "just finished oiling his razor strap and Garrison belt to keep them supple."  During this instant message chat, the undercover law enforcement officer was able to glean enough information from the chat to identify CHARLES FRIEDLANDER as a licensed mental health counselor who resided in Ft. Myers, Florida.  A few more chats ensued between the defendant and the undercover law enforcement officer, and on July 7, 2008, FRIEDLANDER again affirmed his desire to meet with the undercover profile and his friends.  FRIEDLANDER expressed a desire to "work" with the undercover profile's two sons.  When asked how he wanted the boys dressed and positioned, FRIEDLANDER advised that he wanted the boys stripped and bent over a chair or couch.  When asked if he wanted the boys bound, FRIEDLANDER replied that he wanted them bound as he uses "a fairly full swing."  FRIEDLANDER also advised that he might use a "back hand" if warranted.  During the chat, FRIEDLANDER also expressed interest in engaging in sexual activity with the boys and inquired about what the boys had done sexually in the past.  FRIEDLANDER advised he would do "all that they were capable of handling."

On July 9, 2008, using a different computer, FRIEDLANDER again engaged in an instant message chat with the undercover officer, and advised that he had oiled his two razor straps and a Garrison belt. FRIEDLANDER advised that the items would find their mark and that they may cause "quite a few tears." FRIEDLANDER asked what the dress code was for the meeting and further advised that he may shed some clothes during the evening. FRIEDLANDER advised that he was thinking about sexual activity with the undercover profile's sons and was trying to decide what they could handle, and advised that he was a large person and that he would have to "see their size."

4.     On July 14, 2008, in another instant message chat, the defendant told the undercover law enforcement officer's profile that he would be bringing two razor straps, a smaller, heavy belt with holes and a heavy German belt to an agreed upon meeting on July 21, 2008. FRIEDLANDER stated that he may give each of the undercover profile's boys fifteen lashes on each cheek (of buttocks). FRIEDLANDER also stated that his preference for ages to begin sex acts with children was approximately five to ten years old and involved sex play consisting of playing with a switch and razor strap. FRIEDLANDER reaffirmed that he wanted the undercover profile's two boys bound, stripped and bent over a chair or couch for both the "beating and later on."

5.     On July 16, 2008, the undercover law enforcement officer conducted a controlled and recorded phone call with the defendant in which they discussed meeting on July 20, 2008, and the defendant discussed having oral sex and "handling" of the undercover profile's sons at their upcoming meeting.

6.      On July 20, 2008, the defendant drove up to Pinellas County, Florida, from Ft. Myers, Florida, to meet with the undercover agent who posed as a "bad dad" and engage in beatings and sex with his two sons.  In his car, as promised, the defendant brought a number of items which he had mentioned in chats and during the phone conversation with the undercover law enforcement officer, i.e., whips and razor straps.

7.      The defendant just gave the government late expert witness notification regarding their plan to assert a "Fantasy" defense.  Thus, the government certainly should be permitted to use the relevant evidence to demonstrate the defendant's intent.

### **MEMORANDUM OF LAW**

In his Motion in Limine, the defendant seeks to preclude the government from introducing various pictures which were found on his computer, and which clearly demonstrate the defendant's sexual interest in masochistic and sadistic conduct. In this case, a licensed mental health counselor drove two and a half hours to brutally beat and engage in sexual activity with two minors that he didn't know.  As these facts present a most unusual scenario involving the subjects of sadism and sadomasochism which normal jurors would likely have no familiarity with, evidence regarding same is directly and clearly relevant in this case.  On the defendant's computer, are various images involving beatings, and sexual images involving people tied up and bound, which was the very same conduct that was discussed by the defendant with the undercover law enforcement officer.  As such, these images certainly are probative of the defendant's

sexual interests and intent and are relevant and admissible.  The United States asserts that the evidence contained on the defendant's computer, which he used to chat with the undercover law enforcement officer, is inextricably intertwined with the evidence of the charged offense and, therefore, is not extrinsic and should be admissible.

Evidence of criminal activity other than the offense charged is not extrinsic evidence if it is inextricably intertwined with the evidence of the charged offense.  United States v. Collins, 779 F.2d 1520 (11th Cir. 1986); United States v. Foster, 889 F.2d 1049 (11th Cir. 1989).  Furthermore, Rule 404(b) does not apply where the evidence concerns the context, motive, and set-up of the crime and is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.  United States v. Chandler, 996 F.2d 1073 (11th Cir. 1993); United States v. Williford, 764 F.2d 1493 (11th Cir. 1985); United States v. Cancelliere, supra.  Evidence admitted under the "inextricably intertwined" rule, however, is also subject to Fed. R. Evid. 403's balancing requirement. United States v. Church, 955 F.2d 688 (11th Cir. 1992).

In addition to the reasons set forth in Rule 404(b), extrinsic crime evidence may also be admitted to explain other evidence in the case, such as recorded conversations between co-conspirators, or between a defendant and an informant, about previous ventures.  United States v. Pessefall, 27 F.3d 511 (11th Cir. 1994); United States v. Williford, 764 F.2d 1493 (11th Cir. 1985).

At least theoretically, evidence of an uncharged offense, which is offered on the theory that the conduct was "inextricably intertwined" with the charged offense, is not offered under Fed. R. Evid. 404(b).  Rather, the evidence is offered as proof of the charged crime itself.  (Evidence of a defendant's possession of a substantial quantity of cocaine, on a date within the time frame of a charged conspiracy, is admissible as being inextricably intertwined with a charged offense.)  United States v. Wells, 995 F.2d 189 (11th Cir. 1993).  See also United States v. Pessefall, 27 F.3d 511 (11th Cir. 1994); United States v. Ramsdale, 61 F.3d 825 (11th Cir. 1995); United States v. Williford, 764 F.2d 1493 (11th Cir. 1985); United States v. McLean, 138 F.3d 1398 (11th Cir. 1998); United States v. Lehder-Rivas, 955 F.2d 1510 (11th Cir. 1992) evidence of pre-conspiracy drug offenses pertained to the "chain of events forming the context, motive and set-up of the crime").  Similarly, in a fraud case, evidence of the pattern of fraudulent conduct in which the defendant, along with his co-conspirators, participated, is "intrinsic" and not "extrinsic" evidence subject to Rule 404(b).  United States v. Muscatell, 42 F.3d 627 (11th Cir. 1995).

In the present case, evidence on the defendant's computer clearly demonstrates his sexual interest in the very same behavior that he attempted to arrange with the undercover officer posing as a "bad father."  Thus, the photographic evidence on the computer is inextricably intertwined with the other evidence for the charge.

Alternatively, the photographic evidence located on the defendant's computer is certainly relevant to the defendant's knowledge, intent and motive in arranging to meet the undercover profile.  In the present case, the defendant did not solely wish to have sex with children.   He wanted to engage in physical abuse and beating of the children as well.  As such, evidence which shows the defendant's sexual interest is sadistic or sadomasochistic is clearly relevant and admissible under Rule 404(b).

Federal Rule of Evidence 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  The rule permits the introduction of evidence of a prior or uncharged act if the government can demonstrate: (1) a proper purpose for introducing the evidence; (2) that the prior act occurred and that the defendant was the actor; and (3) that the probative value of introducing the evidence outweighs any prejudicial effect the evidence might have.  United States v. Cancelliere, 69 F.3d 1116 (11th Cir. 1995); United States v. Mills, 138 F.3d 928 (11th Cir. 1998).

In <u>United States v. Maxwell</u>, 386 F.3d 1042 (11th Cir. 2004)(*vacated and remanded on other grounds*, 126 S.Ct. 321,  on remand 446 F.3d 1210 (2006), the defendant was charged with possession of child pornography, and at his trial the government introduced evidence of his Internet activity under Rule 404(b).  On appeal, the Eleventh Circuit, with little discussion, upheld the admission of the evidence and after citing Rule 404(b) and stated that "[w]ithout question, the uncharged evidence was probative of Maxwell's knowledge and intent."  Id. at 1050.

In <u>United States v. Smith</u>, 459 F.3d 1276 (11th Cir. 2006), a possession and production of child pornography case, the defendant objected to the admission of 404(b) evidence consisting of:  Photographs of the defendant naked by himself, 2) photographs of the defendant with other women (not the victim) engaged in sexually explicit conduct; and 3) photographs of women (not the victim) striking sexually suggestive positions. The Eleventh Circuit upheld the admission of the evidence and noted that "[t]he district court possesses broad discretion to admit evidence if it has any tendency to prove or disprove a fact in issue."  <u>Id.</u> at 1295.     "'Rule 403 is an extraordinary remedy [,] which should be used only sparingly since it permits the trial court to exclude concededly probative evidence.'  *<u>The balance under the Rule, therefore, should be struck in favor of admissibility</u>.*"  <u>Id.</u> at 1295, *quoting* <u>United States v. Norton</u>, 867 F.2d 1354, 1361 (11th Cir. 1989)(citations omitted)(*emphasis added quoting* <u>United States v. Betancourt</u>, 734 F.2d 750, 757 (11th Cir. 1984).  The court found that the evidence helped establish identity and the pictures made the proffered defense less probable.

The Eleventh Circuit also noted that the district court did not abuse its discretion in finding that the probative value of the questioned evidence was not substantially outweighed by any potential for unfair prejudice, particularly in light of the presumption in favor of admissibility.  While the defendant argued that the evidence may have inflamed the jurors emotions, the Eleventh Circuit noted that while that was a permissible conclusion, it was not a necessary one, and that the jury might also have been able to evaluate the evidence for what it was- photographs from within defendant's lockbox that tended to establish identity, knowledge, and sexual content. Id. at 1296. "That the nature of the crime itself, and therefore the nature of the evidence tending to prove it, is emotionally charged does not mean that the prosecution must be deprived of its most probative evidence." Id. at 1296.

The government asserts that the photographs that the defendant possessed clearly show his interest in physical and sexual abuse of others, the very acts which the defendant wanted to engage in with the undercover profile's children.  The photographs which show masochism and sadism are very probative and clearly demonstrate the defendant's interest, intent, and knowledge in abusing others and committing the instant offense.

Additionally, in the defendant's post Miranda interview with the Detective, the defendant denied going to any web sites involving bondage or sadomasochism, however, the photographs on the defendant's computer demonstrate his precise interest in the very same behavior he wanted to engage in with the children, and directly contradict his post arrest statements.  The defendant has photographs of people tied up, getting spanked and beaten, and are sexual in nature.  During his post-Miranda

12

interview, the defendant also minimized his sexual appetite and claimed that he really didn't plan on having sex with the children because he has erectile dysfunction, and basically claimed not to have any sexual interest in anything.  The photographs and content of the defendant's computer clearly tell a different story and same is necessary to show the defendant's knowledge, intent, and lack of mistake. Additionally, the defendant made a number of other false statements during his taped interview, which could only be corrected by presentation of the images on the defendant's computer. For example, the defendant claimed not to have any sadistic or masochistic photos on his computer during the taped interview, but this statement is false, and the defendant did possess same on his computer.

     In Huddleston v. United States, 485 U.S. 681, 685 (1988), the United States Supreme Court noted that extrinsic acts under Rule 404(b) may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." Id.   Relevant evidence includes any evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evidence. 401.   Certainly, in the present case, images and photographs which the defendant possessed and which demonstrate and are reflective of the defendant's sexual interests in sadomasochistic conduct, certainly make it more probable that the defendant intended to engage in sadomasochistic sexual acts with the children and further that he was interested in sexual activity in general, and that his

medical condition was not such that he had no sexual interest.  The images involving bondage and sexual and physical abuse on the defendant's computer are directly relevant to his abnormal sexual interests which he discussed at length with the undercover officer.

In United States v. Brand, 467 F.3d 179 (2nd Cir. 2006), the defendant was convicted of using a facility of interstate commerce to entice a minor to engage in illicit sexual activity and of traveling in interstate commerce for purpose of engaging in illicit sexual conduct.  In Brand, at trial, the government sought to introduce images of child erotica and child pornography.   The district court ruled that the images were admissible under Rule 404(b) and found that evidence that the defendant exhibited an interest in child erotica and child pornography on the internet in the period leading up to the charged conduct was pertinent to whether he used the internet in an attempt to engage in sexual conduct with [the child]. Id. at 187.     The Second Circuit affirmed the admission of the photographs, stating that the child pornography found on the defendant's computer certainly suggested an "abnormal sexual attraction to children" and was similarly connected to establish relevance. Id. at 198.  In the present case, the fact that the defendant possessed images (depicting sadomasochistic abuse which involved the very same acts that he indicated he wanted to perform with the minor children) is relevant to establishing FRIEDLANDER's intent.

In United States v. Riccardi, 258 F. Supp. 1212 (D. Ct. Kan. 2003), the defendant was found guilty of enticement under 18 U.S.C. § 2422(b) and possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).   In denying a motion for judgment of acquittal on various grounds, the court reviewed it's 404(b) rulings.  In

14

Riccardi, the defendant had called high school boys and talked to them about discipline and requested that they spank themselves. Id. at 1232.  The government charged Riccardi with using a telephone to knowingly persuade, induce, and entice a minor to engage in any sexual activity for which any person can be charged with a criminal offense in violation of 18 U.S.C. § 2422(b).  The government alleged that the underlying state crime "for which any person can be charged with a criminal offense "was a statute that prohibited a person from employing, using, persuading, inducing, enticing or coercing a minor to engage in *sexually explicit conduct* for the purposes of promoting any performance."  The term "sexually explicit conduct" was defined to include "sado-masochistic abuse for the purpose of sexual stimulation and "promoting" was defined to include presenting with the intent to 'arouse or gratify the sexual desire or appeal to the prurient interest of the offender." (Id. at 1232 *citing* K.S.A. § 21-3516(b)(2)).

Obviously, if FRIEDLANDER had been successful in beating and having sex with the two minor boys in the present case, the defendant would have been in violation of various Florida statutes prohibiting sexual acts by adults on minors including capital sexual battery on a minor under F.S.A. § 794.011 (4); F.S.A. § 800.04, "Lewd or lascivious offenses committed upon or in the presence of persons less than 16 years"; and F.S.A. § 827.03  "Abuse of a child."    Similar to the state statute in the Riccardi case, the Florida Statutes also delineate sadomasochistic abuse as a possible lewd and lascivious act on a minor.  Thus, as in the Riccardi case, the government is entitled to put on evidence that the defendant wanted to engage in sadomasochistic abuse of the children and any evidence which is relevant and probative of the defendant's sexual interest in same should be admitted.

15

In <u>Riccardi</u>, the court noted that the government had the burden of proving that the defendant called the school boys in an attempt to have them engage in sado-masochistic abuse for the purpose of sexual stimulation.   The <u>Riccardi</u> court noted that child erotica and other photos of young boys would have been admissible under Rule 404(b) because it had the tendency to prove that the defendant was interested in young males, particularly in the context of discipline and sadism, and that these interests were sexually motivated.    In support of its reasoning, the <u>Riccardi</u> court cited an unpublished opinion of the Sixth Circuit,  <u>United States v. Caldwell</u>, 181 F.3d 104, 1999 WL 238655 (6th Cir. April 13, 1999), in which the appellate court upheld the admission of adult pornography and child erotica that was intermingled with the defendant's child pornography.  In <u>Caldwell</u>, the Sixth Circuit  found that given the defendant's defense of lack of knowledge of the presence of many of the items, the physical evidence conveyed a unique context to the jury.  The Sixth Circuit found that the jury was entitled to know the "setting" of a case and could not be expected to make it's decision in a void without knowledge of the time, place and circumstances of the acts which form the basis of the charge.  The <u>Caldwell</u> Court  reasoned that the government may introduce 'other acts' evidence under Rule 404(b) where there is thrust upon the government, either by virtue of the defense raised by the defendant, or by virtue of the elements of the crime charged, the affirmative duty to prove that the underlying act was done with a specific criminal intent, other acts evidence may be introduced under Rule 404(b). Comparing <u>Riccardi's</u> case to the <u>Caldwell</u> case, the <u>Riccardi</u> court found that the photographs were probative of <u>Riccardi</u>'s knowledge and tended to prove lack of

16

mistake.  Similarly, in the present case, counsel for the defendant has indicated that the defendant may be presenting a "fantasy" defense.  Certainly, if the defendant denies going to sadomasochistic websites and denies a sexual interest in abuse, the government should be permitted to introduce evidence which directly contradicts same.

In summary, the defendant wants to prohibit the government from introducing, photographs of adults engaging in sadomasochism, discipline, or similar activity, however such images are clearly relevant and are evidence of the defendant's intent, and knowledge and should be admissible as extrinsically intertwined evidence and/or under Rule 404(b).  Finally, the government argues that the number of images involving sadomasochistic abuse on the defendant's computer compared with the activities the defendant discussed engaging in with the children is too much of an extraordinary coincidence that an actus reus is more likely.  It is objectively improbable that one who had no sexual interest in anything would have both images and chat involving the same sadomasochistic activities.  It is objectively implausible that it is just an extraordinary coincidence that FRIEDLANDER would chat about physical and sexual abuse and then possess images depicting physical and sexual abuse defies common sense and

17

indicates that he acted with mens rea.[2]  Further, given the defendant's false exculpatory

post arrest statements, the government should put on evidence which establishes the

truth for the jury.  Also, given the late disclosed defense of "it was all a fantasy," the

government should be able to offer all evidence which suggests otherwise.][3]

       **WHEREFORE**, the United States of America, submits that the defendant's

motion should be denied.

                           Respectfully submitted,

                           A. BRIAN ALBRITTON
                           United States Attorney

By:   *s/Amanda C. Kaiser*
       AMANDA C. KAISER
       Assistant United States Attorney
       Florida Bar No. 0083984
       400 North Tampa Street, Suite 3200
       Tampa, Florida  33602
       Telephone:   (813) 274-6315
       Facsimile:     (813) 274-6103
       E-mail: Amanda.Kaiser@usdoj.gov

---

[2]  See § 4.04(6)(b)iii, "*Doctrine of Objective Chances*," <u>Federal Evidence Tactics</u>, Imwinkelreid and Schlueter, Matthew Bender and Co., (2008).

[3]  Bracketed material copied from Government's previous response at Docket No. 67.

18

**U.S. v. CHARLES JACKSON FRIEDLANDER          Case No. 8:08-CR-318-T-27TGW**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 6, 2008, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system which will send a notice of electronic

filing to the following:

George E. Tragos, Esquire
pam@greeklaw.com
george@greeklaw.com

By:     *s/Amanda C. Kaiser*
AMANDA C. KAISER
Assistant United States Attorney
Florida Bar No. 0083984
400 North Tampa Street, Suite 3200
Tampa, Florida  33602
Telephone:   (813) 274-6315
Facsimile:     (813) 274-6103
E-mail: Amanda.Kaiser@usdoj.gov

N:\_Criminal Cases\F\Friedlander, Charles_2008R01924_ack\p_Govt Response to 0184_Def Renewed Motion to Preclude Gov from presenting nude or explicit

photographs.wpd