1                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
2                          TAMPA DIVISION

3        UNITED STATES OF AMERICA,

4            Petitioner,

5                vs.              CASE NO. 8:08-CR-318-T-27TGW
                                  16 DECEMBER 2008
6                                 TAMPA, FLORIDA
                                  PAGES 1 - 31
7                                 VOLUME VII

8

         CHARLES JACKSON FRIEDLANDER,
9
             Defendant.
10
         _____/
11
                     TRANSCRIPT OF TRIAL PROCEEDINGS
12            BEFORE THE HONORABLE JAMES D. WHITTEMORE
                     UNITED STATES DISTRICT JUDGE
13                         and a jury

14       APPEARANCES:

15       For the Petitioner:   **Amanda C. Kaiser**
                               United States Attorney's Office
16                             Suite 3200
                               400 N. Tampa Street
17                             Tampa, Florida 33602

18       For the Defendant:    **George E. Tragos**
                               Tragos & Sartes, PL
19                             Suite 800
                               601 Cleveland Street
20                             Clearwater, Florida 33755

21                             **Peter Anthony Sartes**
                               Tragos & Sartes, PL
22                             Suite 800
                               601 Cleveland Street
23                             Clearwater, Florida 33755

24        Proceedings recorded and transcribed by
         computer-aided stenography.
25

```
 1     Court Reporter:          Linda Starr, RPR
                                Official Court Reporter
 2                              801 N. Florida Avenue
                                Suite 13B
 3                              Tampa, Florida 33602

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1            COURTROOM SECURITY OFFICER:  All rise.  This

 2    Honorable Court is in session, The Honorable James

 3    D. Whittemore presiding.

 4            Be seated, please.

 5            THE COURT:  We've got two questions, actually

 6    requests.  The first is -- I'll just read it.  Jury

 7    requests copy of arrest DVD/recording on 7/1/08 at

 8    Cracker Barrel on 54th and 275 St. Pete.

 9            Possible evidence number 38D.

10            MR. TRAGOS:  They should have that.

11            THE COURT:  They should have that.

12            MS. KAISER:  They should have it.

13            COURTROOM DEPUTY CLERK:  38D, there's no 38D,

14    Your Honor.

15            THE COURT:  Well, maybe they're looking for

16    the wrong exhibit number.  Do you remember what

17    exhibit number that was, Ms. Kaiser?

18            MS. KAISER:  Let me look it up, Your Honor.

19            COURTROOM DEPUTY CLERK:  That's 30A

20    undercover.

21            THE COURT:  It's 30A.

22            COURTROOM DEPUTY CLERK:  Is that right?

23            MS. KAISER:  Yes, that's correct, 30A.

24            COURTROOM DEPUTY CLERK:  They have that.

25            THE COURT:  Capital A or little A, Anne?
```

 1          COURTROOM DEPUTY CLERK:  It's capital A, Your

 2     Honor.

 3          MS. KAISER:  The original is the mini DVD.

 4     That was the original so we put it on a format that

 5     we could play it in the court on a -- so they should

 6     have the mini and they should have a full-size DVD.

 7          COURTROOM DEPUTY CLERK:  They do.

 8          MS. KAISER:  Okay.

 9          THE COURT:  Mini cassette?

10          MS. KAISER:  It wasn't a cassette.  It was a

11     small -- a small special DVD.  But we had to put it

12     on larger one to play it.

13          THE COURT:  So they've got a disc.

14          MS. KAISER:  They should have a full size

15     disc.

16          COURTROOM DEPUTY CLERK:  They do, Judge.

17          THE COURT:  If I call that a CD, is everybody

18     comfortable?  I think that's how most people

19     characterize these discs.

20          MR. TRAGOS:  Is it a CD or DVD?

21          THE COURT:  Well, I mean, it's on a disc.

22     It's a CD type format.

23          MS. KAISER:  Yes, I think so.  Yes.

24          THE COURT:  DVD?

25          MS. KAISER:  I think CD is appropriate because

1       there's no video, it's just audio.

2           THE COURT:  Okay.  I would respond, Government

3       Exhibit 30A is the recording you requested.  You

4       should have a CD, parens, audio marked as Exhibit

5       30A.  Is that acceptable to everybody?  All right.

6           MS. KAISER:  Yes.

7           THE COURT:  The second question or request is

8       jury requests evidence inventory list.  I don't

9       remember how many exhibits we have in evidence.  But

10      the only thing I could think of to satisfy this

11      request or at least assist the jury would be to make

12      a copy of the clerk's exhibit list for both sides.

13      That's just a suggestion.

14          MR. TRAGOS:  We would probably -- we would

15      object to that, Your Honor, because the way we

16      labeled them sometimes on the list was interpretive

17      and --

18          THE COURT:  Well, I don't think the clerk

19      would have done it that way.

20          MR. TRAGOS:  The clerk takes our -- the clerk

21      uses our list that we prepare.  And I think the

22      court has as I have and as I'm sure Ms. Kaiser

23      has -- we've had cases with far more exhibits than

24      this.  This wasn't a huge volume of exhibits.

25          THE COURT:  You know, it's not an uncommon

1    request.  You know, if you're sitting in there as a

2    jury, it may be very difficult to sort through

3    everything without a numerical list, but I'm not

4    sure we have one that's available.  Now, the -- the

5    items that did not go into evidence, of course, we

6    could eliminate here.  What about the government's

7    list, is it descriptive, as well?

8        MS. KAISER:  With the exception of Exhibit

9    Number 1, I think every other description -- I just

10   looked at the exhibit list more closely.  I would

11   say with the exception possibly of the description

12   of Exhibit Number 1, there's really nothing else

13   that's interpretive.  It's just all factual.  So I

14   think maybe we could rewrite the description of

15   number one and it should be acceptable to both

16   sides.

17       MR. TRAGOS:  Your Honor, I haven't seen the

18   clerk's.  Does the clerk also have the person who

19   the exhibit came in with on there?

20       THE COURT:  Right.

21       MR. TRAGOS:  The jury is supposed to rely on

22   their memory as to the testimony.

23       THE COURT:  Well, we could -- we could white

24   out that, the date identified, date admitted.

25   That's not -- what they want is a numerical list

1        with a description which we could -- the way this is

2        formatted, we could simply just cover up the -- in

3        the middle, the date identified, date admitted and

4        witness so they'd have at least -- I'm looking at

5        the defendant's list.  I don't -- the ones that

6        are -- the ones that are in evidence, I don't see

7        any descriptive -- I mean, it's just factual, law

8        enforcement report.  That didn't go into evidence,

9        though, 47.  Did it?

10            MR. TRAGOS:  No.

11            THE COURT:  Anne, you've got that listed as

12       going into evidence?

13            COURTROOM DEPUTY CLERK:  Which one?

14            THE COURT:  47.

15            COURTROOM DEPUTY CLERK:  I have it as going

16       in.

17            THE COURT:  No, it did not go in.

18            MR. TRAGOS:  It did not go in.  My memory is

19       it did not go in.

20            THE COURT:  And you're correct.

21            COURTROOM DEPUTY CLERK:  Your Honor, you're

22       correct.  I had noted it was scratched out.

23            THE COURT:  Well, we need to get --

24            COURTROOM DEPUTY CLERK:  But I have to say the

25       government and the defense both reviewed all the

```
 1      exhibits and agreed to them.

 2           THE COURT:  Well, I can do one of two things.

 3      I can direct the clerk to retrieve Defendant's

 4      Exhibit 47 since it was not admitted.  That was a

 5      foundation objection I think that I sustained.  The

 6      other option is to do nothing.  I don't suggest we

 7      do nothing.  It's not prejudicial to the defendant

 8      that it's in there, obviously.  It's something the

 9      government objected to.  It's not in evidence,

10      however, so it probably should be retrieved.

11           MR. TRAGOS:  I'd think a retrieval would be

12      prejudicial, however, at this point.

13           THE COURT:  Or I could give them an

14      instruction.  Inadvertently Defendant's Exhibit 47

15      is in the jury room.  It was not received in

16      evidence, you are to disregard it.

17           MR. TRAGOS:  But the problem I have with that,

18      Your Honor, is they -- the court asked extensively

19      about the contents of 47 from the witness.  And I

20      don't want the jury to get the impression that's why

21      retrieving it gives me some concern now.  I don't

22      wanted the jury to get the impression that the

23      information contained in there is irrelevant

24      because --

25           THE COURT:  Ms. Kaiser, what do you suggest?
```

1       I'm sorry.

2           MS. KAISER:  I suggest an instruction to them.

3       I don't know why it was on the table with the

4       admitted evidence to begin with.  But I don't know

5       why it went to the jury, and I think that they

6       should be instructed that they're not to rely upon

7       that in any way, that that's not in evidence in this

8       case.  It wasn't received in evidence and they were

9       given it in error.

10          THE COURT:  Why don't we just retrieve it?

11      What's the problem with that?

12          MR. TRAGOS:  Because they would get the

13      impression, Your Honor, I believe, that that

14      information is something they're not to consider in

15      determining their verdict.

16          THE COURT:  Well, with an instruction that

17      they are to consider the testimony describing the

18      contents.  That would cure that; wouldn't it?

19          MR. TRAGOS:  I still think -- I mean, it is a

20      better option than the option the court said before.

21      But I still think that any retrieval at this point

22      or any attention brought to it at this point would

23      be prejudicial.  But I do think the court's

24      suggestion is better than just retrieving it without

25      telling them the testimony is something to be relied

1      on.

2                  COURTROOM SECURITY OFFICER:  Excuse me.

3      There's another note.

4                  THE COURT:  They're almost more demanding than

5      me.

6                  MR. TRAGOS:  Almost.

7                  THE COURT:  All right.  Well, let's first

8      address the evidence.  Come look at the clerk's

9      list.  With the exception of the description of

10     number one, and then the defendant's list, the only

11     items that went in are the ones we would send in.

12                 MR. TRAGOS:  Your Honor, let me go back.  Was

13     54 and 55 admitted?

14                 THE COURT:  Just a moment.

15                 MS. KAISER:  54 and 55 were admitted.

16                 MR. TRAGOS:  They were marked.  I don't

17     remember them being admitted.

18                 MS. KAISER:  They were admitted.  54A and 55A

19     were not admitted.

20                 MR. TRAGOS:  Right.  That's what I'm talking

21     about.  54A and 55A were not admitted.

22                 MS. KAISER:  Correct.

23                 MR. TRAGOS:  Okay.  Your Honor, as I go

24     through, does the court want me to point out the

25     items that I think are descriptive?

```
 1              THE COURT:  Just a moment.

 2      (Brief pause.)

 3              THE COURT:  All right.  What's the problem

 4      with the exhibit list?

 5              MR. TRAGOS:  Looking on the government's

 6      exhibit list, number one as the court already

 7      mentioned, number 35.

 8              THE COURT:  What does it say?

 9              MR. TRAGOS:  Razor straps.  It's strops,

10      S-T-R-O-P-S.

11              THE COURT:  Well, that can be changed.  Just

12      draw an O over the A; right?

13              MR. TRAGOS:  Yes.

14              MS. KAISER:  That's fine.

15              MR. TRAGOS:  39, post-arrest interview,

16      redacted interview tape and transcript of expert.

17              MS. KAISER:  The of expert is incorrect.  I'm

18      not sure why that was on there.  We can cross that

19      out.

20              THE COURT:  You can cross that out.

21              MR. TRAGOS:  And the court has said that the

22      transcript is not evidence, so I don't know if we

23      should identify the transcript on the evidence list.

24              THE COURT:  So if we strike the reference to

25      transcript and expert, that would take care of 39?
```

```
 1            MR. TRAGOS:  Correct, Your Honor.  52 -- it's

 2      actually starting with 50, the descriptive term, sex

 3      toys.

 4            THE COURT:  Strike through that.

 5            MS. KAISER:  We could call it items.

 6            THE COURT:  Implements, items.

 7            MR. TRAGOS:  I think items would be better.

 8            THE COURT:  Items seized, are those the ones

 9      seized or --

10            MS. KAISER:  Yes.

11            MR. TRAGOS:  I think 50, 51 and 52, if we just

12      call them photo of items.

13            THE COURT:  Photos, multiple?

14            MR. TRAGOS:  Right.

15            THE COURT:  Okay.

16            MR. TRAGOS:  I think they're multiple.  Aren't

17      they multiple?

18            THE COURT:  They're obviously three exhibits.

19            MR. TRAGOS:  Right.

20            MS. KAISER:  52, 53 we could just change it to

21      items, sex items.

22            MR. TRAGOS:  Well, I object to the word sex

23      items.

24            THE COURT:  All right.  Look 51 -- 50, 51 and

25      52, those were three photographs; correct?
```

1           MR. TRAGOS:  And 53, as well.

2           THE COURT:  And 53.  We'll just reference them

3      as photos of items.

4           MS. KAISER:  All right.

5           THE COURT:  They can figure that out.

6           MR. TRAGOS:  Then we're going to eliminate FTK

7      report from 54A and 55A?

8           THE COURT:  Eliminate what?

9           MR. TRAGOS:  FTK report desktop, FTK report

10     laptop, they did not go into evidence.

11          THE COURT:  So that's a descriptive notation,

12     the clerk's.

13          MR. TRAGOS:  I'm sorry.  Your Honor, they

14     didn't go into evidence if what we're saying.

15          THE COURT:  We can just redact it.  If they

16     didn't go in evidence, we --

17          MR. TRAGOS:  Right.  They didn't go into

18     evidence.  But I'm just saying it's a two part item.

19          THE COURT:  Okay.

20          MR. TRAGOS:  56, list and phone message.

21          THE COURT:  All right.  Look, we're not going

22     to do this.  If you guys can't agree on it, we're

23     wasting a lot of time.  If you're not in agreement

24     to send the exhibit list back, then I'll just tell

25     them they don't have one.

1          MR. TRAGOS:  Okay.

2          THE COURT:  We're not going to by number by

3     number.

4          MS. KAISER:  I don't think there's anything

5     objectionably descriptive about anything else on

6     this list.

7          THE COURT:  Well, we'll be here 45 minutes

8     talking about it.  This has been a tendency in this

9     trial.  There's no sense doing it.  If you can't

10    agree, that's fine.

11         COURTROOM DEPUTY CLERK:  I need that list

12    back.

13         THE COURT:  All right.  The response is:

14    Jury, Government's Exhibit 30A is the recording you

15    requested.  You should have a CD (audio) marked as

16    Exhibit 30A.

17         Secondly, inadvertently Defendant's Exhibit 47

18    was sent to the jury room.  It was not admitted into

19    evidence.  Please disregard Exhibit 47.  You are to

20    rely on your recollection of the testimony in

21    describing the contents of 47, not the exhibit

22    itself.  And lastly, there's not an available

23    exhibit list.  Any objection to the response?

24         MR. TRAGOS:  No objection to the response.

25    Your Honor, without waiving our original objection

1    that 47 should not be removed at this time.

2         THE COURT:  Ms. Kaiser?

3         MS. KAISER:  No objection to your proposed

4    instruction.

5         THE COURT:  Send that back, please.  All

6    right.  We'll be in recess.  I'm going to go ahead

7    and order lunch for the jury.  I would ask that an

8    inquiry be made about any special dietary needs.

9    Sometimes there's vegetarians or allergies, things

10   like that.

11   (Brief pause.)

12        THE COURT:  Just regular stuff.  All right.

13   We'll be in recess.  I would say be on standby until

14   noon, and then I'm going to take one hour and 15

15   minutes.  So from noon until 1:15 you can go have

16   lunch, do whatever you need to do, then after that

17   be on standby 15 minutes.

18        COURTROOM SECURITY OFFICER:  All rise.

19   (Recess was taken at 12:22 until 12:30 PM.)

20   (Back on the record.)

21        COURTROOM SECURITY OFFICER:  This Honorable

22   Court is now in session.

23        THE COURT:  All right.  Interestingly, after

24   the note was sent into the jury, they immediately

25   handed Defendant's Exhibit 47 to the courtroom

1       security officer and essentially said, we're not

2       supposed to have it.  So it's in my hand.  I'll hand

3       it to the clerk.

4              COURTROOM DEPUTY CLERK:  Your Honor, should we

5       make this a court exhibit now?

6              THE COURT:  No.  It's just defendant's marked

7       for identification.  It was not admitted.

8              MR. TRAGOS:  The court's instruction, though,

9       did go to them?

10             THE COURT:  Yes.  And I think in response --

11      I'm assuming in response to that, they said we're

12      not supposed to have it so, here, which you kind of

13      got to hand it to them.

14             MR. TRAGOS:  I may have neglected to do this

15      to make a record with regards to --

16             THE COURT:  Go ahead.

17             MR. TRAGOS:  But I'd like to also move for a

18      mistrial with regards to them being given --

19             THE COURT:  What would be your basis?

20             MR. TRAGOS:  That -- the fact that they

21      received it and then was told that they shouldn't

22      have it, that could cause confusion.  Plus, it could

23      cause them to give less weight to the information

24      from that document than they would have normally.

25             THE COURT:  Well, the document was not

1      received in evidence, number one.  It was

2      inadvertently sent to the jury room after counsel

3      approved the exhibits.  It's administerial error.  I

4      don't see any prejudice whatsoever.  It was not

5      received in evidence.  The jury's been instructed to

6      rely on their testimony of the contents, not the

7      exhibit itself.

8           It seems to me they did exactly what they

9      should do, sent it back out.  So there's no

10     possibility that they are exposed to something that

11     was not received in evidence.  I'll have to deny

12     your motion.

13          MR. TRAGOS:  Your Honor, can 47 be made a

14     court's exhibit?

15          THE COURT:  We'll make it court's exhibit

16     number two for purposes of the record.  Ms. Kaiser,

17     anything you want to add?

18          MS. KAISER:  No, Your Honor.

19          THE COURT:  Am I correct in my understanding

20     that the prosecution and defense reviewed all of the

21     exhibits before they went back?

22          MS. KAISER:  Yes.  And when the government

23     reviewed the exhibits, there was -- I never noticed

24     that that was listed improperly as an admitted

25     exhibit.  When I checked the exhibits, I

1    specifically went through and I only saw the

2    exhibits that had been admitted as evidence.  So I'm

3    not sure how that improperly got on the counsel

4    table or on the exhibit table with all the other

5    exhibits.  I think that's some error on the

6    defense's part.  And if there is any prejudice, it's

7    certainly the defendant's own fault.

8         THE COURT:  Well, I don't -- I'm not

9    suggesting fault.  I'm simply saying there cannot be

10   prejudice.  It's a defense exhibit.  The

11   government's objection was sustained.  It's not in

12   the jury room.  The jury obviously heeded the

13   court's instructions, did exactly what they should

14   have done, that is, disregard the exhibit.  Whether

15   it's put aside on a table and not looked at or sent

16   back out, as they did, seems to me the same result.

17        So the motion is denied.  We'll be in recess.

18   Again, be available until noon and then take a lunch

19   break until 1:15.

20        COURTROOM DEPUTY CLERK:  Just for the record,

21   it would be Court Exhibit 6 since the communications

22   from the jury --

23        THE COURT:  All right.  Court's Exhibit 6,

24   since the questions from the jury are marked as

25   court's exhibits.

1          MS. KAISER:  Your Honor, I just want to

2     correct the record, if I misspoke.  I certainly

3     don't think there's any prejudice at this point

4     whatsoever.

5          THE COURT:  I'm glad you concur.  Thank you.

6          MS. KAISER:   Thank you.

7          THE COURT:  All right.  Thank y'all.  We'll be

8     in recess.  But before y'all leave, Mr. Tragos, I,

9     of course, have no way of knowing what the verdict

10    will be.  But I think it would behoove counsel to

11    discuss what the government's position would be in

12    the event of a conviction in terms of release

13    conditions in fairness to both sides so that you're

14    prepared to address those matters.

15          The thought occurred to me this morning

16    that -- and that's not something I normally would

17    address with you.  But he's on fairly stringent

18    pretrial release conditions.  I don't know the

19    circumstances.  Judge --

20          MR. TRAGOS:  Wilson.

21          THE COURT:  Judge Wilson imposed those.  So

22    take a few moments and at least discuss your

23    respective positions hypothetically in the event of

24    a conviction.  Of course, in the event of an

25    acquittal, of course, it's moot.  And I think

1      Ms. Few was wrong about that forfeiture process.

2      She's thinking about pleas of guilty.  There's a

3      preliminary order of forfeiture incident to plea

4      agreement.  That's a whole different process than

5      what we have now.  We've got a trial.  So I thought

6      about that after we adjourned last night, and I

7      think we need to have an agreement on procedure.

8      Correct?  All right.  Very good.  Be in recess.

9           COURTROOM SECURITY OFFICER:  All rise.

10     (Recess was taken at 12:38 until 2:35 PM.)

11          COURTROOM SECURITY OFFICER:  This Honorable

12     Court is now in session, The Honorable James D.

13     Whittemore presiding.  Be seated, please.

14          THE COURT:  We have a note from the jury

15     indicating they've reached a verdict.  Please bring

16     the jury in.

17          COURTROOM SECURITY OFFICER:  Yes, sir.  All

18     rise for jury, please.

19          THE COURT:  Thank you, and be seated.

20     Mr. Runfola, has the jury reached a verdict?

21          JURY FOREPERSON:  Yes, we have, Your Honor.

22          THE COURT:  If you'd hand it to the courtroom

23     security officer, please.  Thank you, sir.  Madam

24     Clerk, if you'll please publish the verdict and poll

25     the jury.

1          COURTROOM DEPUTY CLERK:   Case Number 8:08

2     Criminal 318-T-27TGW, United States of America

3     versus Charles Jackson Friedlander.   Verdict:

4     Number One.   Count One of the indictment.   As to the

5     offense of using a facility or means of interstate

6     commerce to knowingly and willfully attempt to

7     persuade, induce, entice or coerce an individual who

8     had not attained the age of 18 to engage in sexual

9     activity for which any person can be charged with a

10     criminal offense, in violation of 18 USC Section

11     2422(b), we, the jury, find the defendant, Charles

12     Jackson Friedlander, guilty.

13          Do you find beyond a reasonable doubt that,

14     Number One:   That defendant knowingly misrepresented

15     his age in communicating with and negotiating with

16     the undercover officer who posed as the father of

17     the minors in an attempt to stimulate or cause a

18     meeting to engage in sexual activity?   Answer:   Yes.

19          Number Two:   The defendant used a computer to

20     communicate with and arrange the meeting with the

21     undercover officer to have sexual contact with his

22     sons?   Answer:   Yes.

23          Number Three:   That the offense involved

24     minors who had not attained the age of 12 years?

25     Answer:   Yes.   So say we all this 16th day of

1       December 2008, Harold Peter Runfola, foreperson.

2            Mr. Runfola, is this your verdict?

3            FOREPERSON:  Yes, ma'am.

4            COURTROOM DEPUTY CLERK:  Shauna Brueck, is

5       this your verdict?

6            JUROR:  Yes, ma'am.

7            COURTROOM DEPUTY CLERK:  Robert Masse, is this

8       your verdict?

9            JUROR:  Yes, ma'am.

10           COURTROOM DEPUTY CLERK:  Regina Perrin, is

11      this your verdict?

12           JUROR:  Yes, ma'am.

13           COURTROOM DEPUTY CLERK:  Christopher Hardacre,

14      is this your verdict?

15           JUROR:  Yes, ma'am.

16           COURTROOM DEPUTY CLERK:  Charles Germain, is

17      this your verdict?

18           JUROR:  Yes, ma'am.

19           COURTROOM DEPUTY CLERK:  Eugene Egan, is this

20      your verdict?

21           JUROR:  Yes, ma'am.

22           COURTROOM DEPUTY CLERK:  William Krupp, is

23      this your verdict?

24           JUROR:  Yes, ma'am.

25           COURTROOM DEPUTY CLERK:  Randall Kovacevic, is

1      this your verdict?

2            JUROR:  Yes, ma'am.

3            COURTROOM DEPUTY CLERK:  Bruce Lakin, is this

4      your verdict?

5            JUROR:  Yes, ma'am.

6            COURTROOM DEPUTY CLERK:  Rich Thompson, is

7      this your verdict?

8            JUROR:  Yes, ma'am.

9            COURTROOM DEPUTY CLERK:  Lisbeth Pumphrey, is

10     this your verdict?

11           JUROR:  Yes, ma'am.

12           THE COURT:  Thank you, Madam Clerk.  Thank

13     you, members of the panel.  It's been seven days

14     that you've been with us.  We appreciate your

15     participation in our criminal justice system.  I

16     have been told over the years that jury service

17     reinforces the importance of jury and citizen

18     participation in our criminal justice system, and I

19     hope that you have had that experience.

20           You may go about your business without ever

21     discussing the case again.  No one may talk to you

22     or address you about the verdict without an order

23     from me.  If, on the other hand, you wish to share

24     constructive comments with the attorneys about the

25     manner in which they performed, I'm sure they would

1     welcome those comments.  But at the same time, they

2     may not approach you.  It's entirely up to you.

3          If you do choose to speak with one or both

4     attorneys, please be mindful that the deliberations

5     have been conducted in secret and you should never

6     disclose the nature of those deliberations.  With

7     that, you are discharged.  And have a safe and happy

8     holiday season.

9          COURTROOM SECURITY OFFICER:  Rise for the

10    jury, please.

11    (Jury out at 2:40 PM.)

12         THE COURT:  Be seated, please.  The jury,

13    having returned a verdict of guilt, I do hereby

14    adjudicate the defendant guilty of the offense

15    charged in the indictment.  We do need a sentencing

16    date, Madam Clerk.

17         COURTROOM DEPUTY CLERK:  Yes, sir.  Your

18    Honor, March 16th, 2009 at 1:30.

19         THE COURT:  I will schedule a sentencing

20    hearing for 1:30 PM, March 16th, 2009, in this

21    courtroom.  And direct the United States Probation

22    Office to conduct and prepare a presentence report.

23    And, Mr. Tragos, you should make contact with them

24    in the next 24 hours to schedule whatever interviews

25    that you and they deem necessary so that that

1       process is not delayed.

2              What says the government as to conditions of

3       release?

4              MS. KAISER:  Your Honor, at this time the

5       United States requests that the defendant be

6       detained.  Pursuant to Title 18 United States Code

7       section 3143(a)(2), it's a mandatory provision for

8       the court to order the detention of a person who has

9       been convicted of a crime of violence, unless the

10      court finds that there's a substantial likelihood

11      that motion for acquittal or new trial be granted,

12      which is not the case in this situation; or under

13      Subsection (ii)and(b), that the attorney for the

14      government has recommended no sentence of

15      imprisonment, and you would find by clear and

16      convincing evidence that the person is not likely to

17      flee or pose a danger to the community.

18             That other caveat is not met in this case.

19      The government is going to seek incarceration.  And

20      so pursuant to Title 18, United States Code Section

21      3143, which says that the judicial officer shall

22      order that a person who has been found guilty of a

23      crime of violence be detained, the government

24      requests that he be detained pending sentencing.

25             THE COURT:  Mr. Tragos, two things.  First, we

1    do have a forfeiture allegation in the indictment.

2    Pursuant to our earlier discussions, there was an

3    indication that you and your client were in

4    agreement that the matter could be handled at

5    sentencing in the event of a conviction.  Is that

6    still the position of the defendant?

7          MR. TRAGOS:  Yes, Your Honor.  We have

8    executed the waiver and I have it here with me.

9          THE COURT:  All right.  Let me just on the

10   record, Mr. Friedlander, you do have the right to a

11   jury trial on the forfeiture allegation of the

12   indictment.  It's my understanding the government

13   seeks only to forfeit the laptop and the tower, I

14   call it, the desktop computer.

15         I know you've spoken with Mr. Tragos about

16   your right, and I'm looking now at your waiver of

17   forfeiture hearing before a jury.  Is that your

18   intent, sir?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Do you have any questions about

21   that?

22         THE DEFENDANT:  No, sir.

23         THE COURT:  Have you had sufficient time to

24   speak with Mr. Tragos about your right to a jury

25   trial and the forfeiture allegation and the

1        importance and significance of waiving that right?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Do you understand that I will make

4        the determination at sentencing as to the

5        forfeiture?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  All right.  I will find that

8        Mr. Friedlander has made a knowing and voluntary

9        waiver of his right to a jury trial with respect to

10       forfeiture.  And I will approve his waiver.

11       Mr. Tragos, as to conditions of release?

12             MR. TRAGOS:  Your Honor, the provision that

13       the government read, the provision about the court

14       making a finding about clear and present danger to

15       the community or conditions of release that could

16       impact the community is a separate section from the

17       first two sections.  And although the, there's a

18       word and under the law that the court recognizes the

19       and/or interchangeable, and if this court finds that

20       there are sufficient situations to allow him to be

21       released, and I can't imagine that there are any

22       more stringent release provisions than what Judge

23       Wilson determined in this case, that we are prepared

24       to continue those provisions if the court deems it

25       so under that last provision of the statute cited by

1       the prosection.

2            THE COURT:  Do you agree that the offense of

3       conviction qualifies as a crime of violence, as

4       Ms. Kaiser has indicated?

5            MR. TRAGOS:  Yes, Your Honor.  Pursuant to

6       Chapter 117.  I believe that's right.  Yeah, Chapter

7       117.

8            THE COURT:  I find that there is not a

9       substantial likelihood that a motion for an

10      acquittal or new trial will be granted.  That, of

11      course, is without prejudice to the filing of same.

12      But at this juncture, I cannot envision a successful

13      motion.

14           Under Section 3143, Subsection (a)(2), the

15      detention is mandatory under the plain language of

16      the statute.  There are two exceptions, neither of

17      which apply here.

18           The nature of the offense is, likewise,

19      troubling.  I listened carefully to the evidence,

20      particularly when the defense presented its

21      evidence, and I am satisfied that the conduct

22      involved demonstrates a concern for the public's

23      safety.

24           I do consider the defendant's age, his -- the

25      lack of any criminal history, according to the

1    testimony.  But the offense is troubling.  And I

2    will, therefore, order that he be detained pending

3    sentencing.  The conditions of release are

4    stringent, I agree.  But we are in a different

5    posture now.

6           Is there anything else we can address here

7    today?

8           MR. TRAGOS:  Yes, Your Honor.

9           THE COURT:  Yes, sir.

10          MR. TRAGOS:  I would ask the court with

11   regards to all posttrial motions, including Rule 29,

12   Rule 45 and Rule 33, but not limited to those, I

13   would ask this court to allow me 30 days within

14   which to file those, since it's the Christmas

15   holidays.

16          THE COURT:  Ms. Kaiser?

17          MS. KAISER:  Yes, Your Honor.  The government

18   would request that he be given 10 days pursuant to

19   the rules for any posttrial motions.

20          THE COURT:  Is there any prohibition of

21   granting an extension, a reasonable extension?

22          MS. KAISER:  No.  That's fine.

23          THE COURT:  Okay.  I'm going to grant 30 days

24   given the upcoming holidays and 15 days for the

25   government to respond.  I do not want the sentencing

1    delayed by posttrial motions unless, of course,

2    they're granted.  So try to stay within those

3    timeframes.  I think that's a reasonable request,

4    given the time of year.

5         MR. TRAGOS:  Thank you, Your Honor.

6         THE COURT:  Thank you, gentlemen and ladies.

7    Anything else?

8         MS. KAISER:  No, Your Honor.

9         THE COURT:  We'll be in recess.  The clerk

10   needs to speak to the prosecution and agent about

11   the exhibits, how they will be maintained pending

12   posttrial matters.  Thank you.  We'll be in recess.

13   (Hearing concluded.)

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3      STATE OF FLORIDA              )

4      COUNTY OF HILLSBOROUGH    )

5          I, Linda Starr, RPR, Official Court Reporter for

6      the United States District Court, Middle District,

7      Tampa Division,

8          DO HEREBY CERTIFY, that I was authorized to and

9      did, through use of Computer Aided Transcription,

10     report in machine shorthand the proceedings and

11     evidence in the above-styled cause, as stated in the

12     caption hereto, and that the foregoing pages,

13     numbered 1 through 31, inclusive, constitute a true

14     and correct transcription of my machine shorthand

15     report of said proceedings and evidence.

16         IN WITNESS WHEREOF, I have hereunto set my hand in

17     the City of Tampa, County of Hillsborough, State of

18     Florida, this 16th day of March 2009.

19

20

21              _____*/s/ Linda Starr*_____
                 Linda Starr, RPR, Official Court Reporter
22

23

24

25