1                    UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
2                         TAMPA DIVISION

3       UNITED STATES OF AMERICA

4            vs.              CASE NO. 8:08-CR-318-T-27TGW
                             27 MARCH 2009
5                            TAMPA, FLORIDA
                             PAGES 1 - 47
6                            VOLUME V

7       CHARLES JACKSON FRIEDLANDER
        _____/
8
                    TRANSCRIPT OF TRIAL PROCEEDINGS
9          BEFORE THE HONORABLE JAMES D. WHITTEMORE
                    UNITED STATES DISTRICT JUDGE
10                       and a jury

11      APPEARANCES:

12      For the Petitioner:   **Amanda C. Kaiser**
                             United States Attorney's Office
13                           Suite 3200
                             400 N. Tampa Street
14                           Tampa, Florida 33602

15      For the Defendant:   **George E. Tragos**
                             Tragos & Sartes, PL
16                           Suite 800
                             601 Cleveland Street
17                           Clearwater, Florida 33755

18                           **Peter Anthony Sartes**
                             Tragos & Sartes, PL
19                           Suite 800
                             601 Cleveland Street
20                           Clearwater, Florida 33755

21      Court Reporter:       Linda Starr, RPR
                             Official Court Reporter
22                           801 N. Florida Avenue
                             Suite 13B
23                           Tampa, Florida 33602

24       Proceedings recorded and transcribed by
        computer-aided stenography.
25

1

2                                  **INDEX**

3      The Court's Instructions to the Jury........Page 14
       Jury's Verdict..............................Page 41

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          COURTROOM SECURITY OFFICER:  All rise.  This

2     Honorable Court is in session, The Honorable James

3     D. Whittemore presiding.

4          Be seated, please.

5          THE COURT:  We're missing a couple of jurors

6     still.  While we're waiting, any last minute

7     problems with the instructions?

8          MS. KAISER:  Not with the instructions, Your

9     Honor.  I do want to --

10         THE COURT:  All right.  Let me take it one

11    step at a time.  Instructions are okay.

12         Now, I understand the government wants to

13    withdraw the special findings on the verdict.  Is

14    that correct?

15         MS. KAISER:  That's correct, Your Honor.

16         THE COURT:  Which ones?

17         MS. KAISER:  The ones that -- all of them.

18    All of them.  I discussed the issue with some senior

19    litigation counsel in my office, and they agreed

20    with --

21         THE COURT:  Hum, that's interesting.

22         MS. KAISER:  -- Mr. Tragos's position that

23    they're unnecessary and they shouldn't be given

24    because they said post *Booker*, it's the court's

25    determination, it's not a jury issue as to the

1    specific offense characteristics.  They said it's a

2    matter that the judge is supposed to determine at

3    sentencing and not the jury.

4         THE COURT:  Hum.

5         MS. KAISER:  So based on that, I'm withdrawing

6    my request and agreeing with Mr. Tragos's position

7    that they should not be given.

8         MR. TRAGOS:  We -- may I respond to that?

9    That's not what we said yesterday.  What we said was

10   we said that there should be a bifurcated -- that if

11   they find him guilty, then the jury still has to

12   make these findings.

13        In looking -- we looked at the sentencing

14   guidelines last night.  These are enhancements.  And

15   the jury is going to have to make a decision on

16   these things.  So it's whether the Court -- whether

17   they -- and that was our argument.  And the Court's

18   decision was that -- to go ahead and have them make

19   that decision, it says in bold print, after you find

20   him guilty.

21        But we didn't -- we never said we didn't think

22   the jury had to make these findings.  The jury has

23   to make these findings.  And I have no -- and after

24   going and reading the guidelines and reading the

25   notes, I think the Court has to send this to the

```
 1      jury for a decision.  So I -- the way it's

 2      written --

 3           THE COURT:  The government asked me not to do

 4      it.  Are you objecting to that?

 5           MR. TRAGOS:  Yes.

 6           THE COURT:  You want me to send them to the

 7      jury?

 8           MR. TRAGOS:  Yes.  It has to -- I mean, that's

 9      the way I read the law, it has to go to the jury for

10      a decision.

11           THE COURT:  Okay.  Accepting for purposes of

12      the moment you are correct, the government doesn't

13      want it to go to the jury.  So if it doesn't go to

14      the jury, it can't be used to enhance.

15           MS. KAISER:  No, that's not --

16           MR. TRAGOS:  If the Court is making that

17      ruling --

18           THE COURT:  I'm not arguing with you,

19      Ms. Kaiser.  I'm asking Mr. Tragos to give me --

20      make sure I understand his position.  I don't want

21      to be reading about this in a 2255.

22           MR. TRAGOS:  I am not -- oh, I see what you're

23      saying.

24           THE COURT:  If you don't want it to go to the

25      jury --
```

1          MR. TRAGOS:  If it doesn't go to the jury at

2     all, then, that's fine.  I guess we can't argue with

3     that because --

4          THE COURT:  It would be an issue at

5     sentencing, I presume, if we get there.

6          MR. TRAGOS:  Well, we believe it would be

7     resolved if the jury doesn't make the decision.

8     It's an enhancement.

9          THE COURT:  But the senior litigation

10    attorneys at the U.S. Attorney's Office have a

11    different opinion.

12         MR. TRAGOS:  They usually do.  They usually

13    do.

14         THE COURT:  It's not a -- you know, we're

15    smiling, but I hope that's understood to be in a

16    professional and very Socratic atmosphere.  These

17    are serious matters, people.  And I'm not about to

18    pass at this moment on whether they should or should

19    not go to the jury.

20         We are in an advisory guideline system.  The

21    government's position may very well be correct.  If

22    it's not correct, however, and we're at sentencing

23    and we don't have these jury determinations, then,

24    of course, there won't be any enhancements if

25    there's a conviction and if we're in a sentencing

1      posture.

2           So if the government's moving to withdraw

3      those special interrogatories on the verdict form,

4      that's the issue.  There's an objection to that, I

5      need to hear it and hear what the objection is.

6           MR. TRAGOS:  Well, I just want it made clear

7      that the defense believes these are enhancements

8      which a jury does have to pass on.  But if the

9      government is willing to waive them, then we have no

10     objection to their waiving these enhancements and it

11     going to the jury without those items.

12          THE COURT:  Ms. Kaiser, I don't think you're

13     waiving the enhancements; are you?

14          MS. KAISER:  No, Your Honor, I'm not.

15          THE COURT:  Then they'll go to the jury, in an

16     abundance of caution.  There is no harm to the

17     government, and certainly no harm to the defendant

18     in asking the jury to determine beyond a reasonable

19     doubt these factual aspects of the case.  It

20     eliminates any *Apprendi* issues and certainly does

21     not prejudice the defendant.

22          MS. KAISER:  Your Honor?

23          THE COURT:  Yes, ma'am.

24          MS. KAISER:  The harm to the government would

25     be the difference in the burden of proof.  As the

1    guideline issues are --

2         THE COURT:  I'm not worried about harm to the

3    government.  I'm worried about harm to the

4    defendant.

5         MS. KAISER:  Yes, Your Honor, but --

6         THE COURT:  These are sentencing enhancements.

7    That doesn't harm the government.

8         MS. KAISER:  Your Honor, but the burden of

9    proof for the sentencing enhancements is the -- is

10   preponderance of the evidence.

11        THE COURT:  All right.  You get me some

12   authority instead of just talking about this in a

13   vacuum based on your senior litigation lawyers in

14   your office.

15        I'm losing a lot of confidence in your office,

16   Ms. Kaiser.  I understand everybody's been running

17   around this morning looking for a computer so the

18   jury can watch the evidence.  In my last trial, the

19   government didn't have a computer and it was very

20   awkward because the Court had to provide its own

21   laptop computer.

22        And these things have to be done ahead of time

23   and planned out so we're not running around here,

24   chasing our tails, so to speak.  I'm frustrated.

25   I'm sure it's very apparent to counsel.  I don't

1    know if it is on the record.  But we've tried this

2    case twice now and we are dealing with matters that

3    don't need to be dealt with.

4         You have some authority I can consider for

5    your position one way or the other?  Anybody?

6         MS. KAISER:  Well, Your Honor, the *Apprendi*

7    case, as you know, deals with increasing the penalty

8    for a crime beyond the proscribed statutory maximum.

9    And that's what has to be admitted to the jury, not

10   a sentencing factor.  Those are determined post

11   *Booker* by the court and not by the jury.

12        THE COURT:  All right.  And you're certain of

13   your position on that?

14        MS. KAISER:  Yes, Your Honor.

15        THE COURT:  How are we doing on our jury?

16        COURTROOM DEPUTY CLERK:  They're all present.

17        (Brief pause.)

18        MS. KAISER:  Your Honor?

19        THE COURT:  Just a moment.  I'm doing the

20   research that nobody did.

21        MS. KAISER:  I've got a case for you that

22   might help, Your Honor.

23        THE COURT:  Just a moment.  Just a moment.

24        (Brief pause.)

25        THE COURT:  What's the case you have?

1          MS. KAISER:  *United States versus Sanchez*, 269

2     F.3d 250, Eleventh Circuit 2001.  It says -- it held

3     that -- "*Sanchez* held that *Apprendi* does not require

4     that all sentencing factors be proven beyond a

5     reasonable doubt to the jury.  Only factors that

6     effectively increase the sentence above the

7     statutory maximum for the offense of conviction must

8     be so proven."  That's *Sanchez*, 269 F.3d at 1261.

9          Also, Your Honor, the United States does have

10    a clean computer that we can submit to the jury.

11         THE COURT:  Well, I'm familiar with *Sanchez*.

12    I'm actually looking for more recent Eleventh

13    Circuit cases.  I found, for example, *United States*

14    *versus Rodriguez*, an April -- excuse me, June 2006

15    decision, 185 Fed. Appx. 813, finding that "the use

16    of extra verdict enhancements in an advisory

17    guideline scheme is not unconstitutional."

18         I think the issue was effectively resolved in

19    that time era.  Cert was denied in that case, and

20    that may be why there's no more recent cases, the

21    difference being between a mandatory guideline

22    system and the advisory system post *Booker*.  That

23    principle is discussed again in November of that

24    year in *United States versus Small*, 204 Fed. Appx.

25    867.  Cert was denied in that case, as well.

1        So it does appear that the use of an extra

2    verdict enhancement in an advisory guideline scheme

3    is not a violation of the defendant's Sixth

4    Amendment right.  Do you have any contrary

5    authority, Mr. Tragos?  And I'm not putting you on

6    the spot, but I wanted to make sure you have that

7    opportunity.

8        MR. TRAGOS:  No, Your Honor.  Well, two

9    things.  Obviously, the Court made a decision

10    yesterday and we weren't anticipating that we were

11    going to have argument today.

12        But, secondly, Your Honor, I think that just

13    as long as our objection is on the record, then we

14    believe that these items should go to the jury and,

15    therefore, we are requesting that they do go to the

16    jury.

17        THE COURT:  All right.  In light of the case

18    law and the government's position, I will overrule

19    the objection.  We will have a one-question verdict

20    form, guilty or not guilty.

21        Are we ready for the jury now?  I know

22    Mr. Sartes has filed his motion.  I haven't seen it

23    yet.  Ms. Kaiser, when we finish, take a look at

24    that motion.  If you want to respond, let's get

25    something done today.  I don't want that to be

1        sitting around.

2                Of course, if there's a not-guilty verdict, it

3        will be moot.  I'm looking at the motion now.  It's

4        Docket 260.  Fortunately, it's fairly brief.  So

5        take a look at it.  And, of course, if you can

6        respond sometime early next week, that would be

7        helpful to me, if there's a guilty verdict.

8                MS. KAISER:  Yes, Your Honor.

9                THE COURT:  Are we ready?  I expect the jury

10       may very well want that computer, Ms. Kaiser.  So do

11       you have it available and do you have the proper

12       format so we can play the disc?

13               MS. KAISER:  I do, Your Honor.  I have a

14       government's computer right here.

15               MR. TRAGOS:  Your Honor, I would also like an

16       affirmative assertion from --

17               THE COURT:  I'm sorry.  I just didn't hear

18       you.

19               MR. TRAGOS:  Affirmative assertion from the

20       government that there's nothing else, no other data

21       on this computer so that -- we do have some people

22       that are rather sophisticated on this jury who would

23       have the ability to look around and see what else is

24       on that computer.

25               THE COURT:  Is the -- of course, this assumes

1    the jury asks for the computer to assist them.

2    What's the format of the disc?  Is it just a regular

3    CD or is it a DVD or what?

4         MS. KAISER:  There's a -- there's both, I

5    believe.  There's a CD and a DVD because there's a

6    video and there's an audio.

7         And I'd ask -- I'd ask the Court to have

8    Mr. Tragos also review this before it goes to the

9    jury so there's no issues later.  I want him to also

10   be comfortable with what goes to the jury or --

11        THE COURT:  We're going to use my mini laptop,

12   so there's no question.  Do you want to review it,

13   Mr. Tragos?

14        MR. TRAGOS:  I trust you, Judge.

15        THE COURT:  Don't trust me.  I haven't used

16   it.  I've just been shown how to use it.

17   Ms. Kaiser?

18        MS. KAISER:  That's fine with the government,

19   Your Honor.

20        THE COURT:  All right.  We'll bring it in

21   after we send the jury out.  Everybody can look at

22   it, we'll test the --

23        MR. TRAGOS:  We did that already.

24        THE COURT:  -- the CD.  On mine, you did?

25        MR. TRAGOS:  Yes.

1          THE COURT:  All right.  All right.  Bring the

2     jury in, please.

3          You guys have looked at the evidence?  I

4     understood you finished that last night?  Everything

5     is fine?

6          MR. SARTES:  Yes, Judge.

7          THE COURT:  Have you got a redacted copy of

8     the indictment, Madam Clerk?  Not yet.

9          COURTROOM SECURITY OFFICER:  Rise for the

10     jury.

11          (Jury in at 9:30 AM.)

12          THE COURT:  Good morning.  Please be seated.

13     Before I begin reading the instructions, let me

14     cover a couple of points.

15          You'll have a copy of these instructions in

16     the jury room to assist you in your deliberations,

17     so you need not necessarily take notes.  The jury

18     instructions are formatted in a way that may not

19     seem very efficient to you, but that's a result of

20     having certain pattern instructions and then any

21     modifications that I may have made.  So you may see

22     a lot of wasted space.  They're approximately 19

23     pages long, but they are certainly not 19 pages of

24     text.

25          It is now my responsibility to instruct you on

1    the rules of law that you must follow and apply in

2    deciding this case.  When I have finished, you will

3    go to the jury room and begin your deliberations.

4         It is your duty to decide whether the

5    government has proven its case beyond a reasonable

6    doubt, that is, the specific facts necessary to find

7    the defendant guilty of the crime charged in the

8    indictment.

9         You must make your decision only on the basis

10   of the testimony and the other evidence which has

11   been presented here during the trial.  And you must

12   not be influenced in any way by either sympathy or

13   prejudice for or against the defendant or the

14   government.

15        You must also follow the law as I explain it

16   to you, whether you agree with the law or not.  And

17   you must follow all of my instructions as a whole.

18   You may not single out or disregard any of the

19   court's instructions on the law.

20        The indictment, or formal charge against the

21   defendant, is not evidence.  Indeed, every defendant

22   is presumed by the law to be innocent.  The law does

23   not require a defendant to prove innocence or to

24   produce any evidence at all.

25        And if a defendant elects not to testify, you

1    cannot consider that in any way during your

2    deliberations.  The government has the burden of

3    proving a defendant guilty beyond a reasonable

4    doubt.  And if it fails to do so, you must find the

5    defendant not guilty.

6         While the government's burden is a strict or

7    heavy burden, it is not necessary that a defendant's

8    guilt be proven beyond all possible doubt.  It is

9    only required that the government's proof exclude

10   any reasonable doubt concerning the defendant's

11   guilt.

12        A reasonable doubt is defined as a real doubt,

13   based upon reason and common sense, after careful

14   and impartial consideration of all of the evidence

15   in the case.  Proof beyond a reasonable doubt,

16   therefore, is proof of such a convincing character

17   that you would be willing to rely and act upon it

18   without hesitation in the most important of your own

19   affairs.

20        If you are convinced that the defendant has

21   been proved guilty beyond a reasonable doubt, say

22   so.  If you're not so convinced, say so.

23        As I said earlier, you must consider only the

24   evidence that I have admitted in the case.  The term

25   "evidence" includes the testimony of the witnesses

1    and the exhibits which have been received or

2    admitted in the record.

3         Again, remember that what the lawyers say is

4    not evidence, and what they say is not binding on

5    you.  It is your own recollection and interpretation

6    of the evidence that controls.

7         Also, you should not assume from anything I

8    may have said during the course of the trial that I

9    have any opinion concerning any of the issues in the

10   case.  Other than my instructions on the law to you,

11   you should disregard anything I may have said during

12   the trial in arriving at your own decision

13   concerning the facts.

14        In considering the evidence, you may make

15   deductions and reach conclusions which reason and

16   common sense lead you to make.  And you should not

17   be concerned about whether the evidence is direct or

18   circumstantial.

19        The law makes no distinction between the

20   weight you may give to either direct or

21   circumstantial evidence.  Direct evidence is the

22   testimony of one who asserts actual knowledge of a

23   fact, such as an eyewitness.  Circumstantial

24   evidence is proof of a chain of facts and

25   circumstances tending to prove or disprove any fact

1  in dispute.

2    Now, in saying that you must consider all of

3  the evidence in the case, I do not mean that you

4  must accept all of the evidence as true or accurate.

5  You should decide whether you believe what each

6  witness had to say, and how important that testimony

7  was.

8    In making that decision, you may believe or

9  disbelieve any witness in whole or in part.  Also,

10  the number of witnesses testifying concerning any

11  particular dispute is not controlling.

12    In deciding whether you believe or do not

13  believe a witness, I suggest that you ask yourselves

14  a few questions.  Did the witness impress you as one

15  who was telling the truth?  Did the witness have any

16  particular reason not to tell the truth?  Did the

17  witness have a personal interest in the outcome of

18  the case?  Did the witness seem to have a good

19  memory?  Did the witness have the opportunity and

20  the ability to observe accurately the things about

21  which the witness testified?  Did the witness appear

22  to understand the questions clearly and answer them

23  directly?  Did the witness's testimony differ from

24  other testimony or other evidence in the case?

25    You should also ask yourself whether there was

1    evidence tending to prove that a witness testified

2    falsely concerning some important fact, or whether

3    there was evidence that at some other time a witness

4    said or did something or failed to say or do

5    something which was different from the testimony the

6    witness gave before you during the trial.

7         You should keep in mind, of course, that a

8    simple mistake by a witness does not necessarily

9    mean that the witness was not telling the truth as

10   he or she remembers it, because people naturally

11   tend to forget some things and to remember other

12   things inaccurately.

13        So if you find that a witness has made a

14   misstatement, you need to consider whether it was

15   simply an innocent lapse of memory or an intentional

16   falsehood.  The significance of that may depend on

17   whether it has to do with an important fact or only

18   with an unimportant detail.

19        When knowledge of certain technical subjects

20   may assist you, a person having special training or

21   experience in that technical field is permitted to

22   testify in the form of an opinion concerning those

23   technical matters.

24        Merely because such a witness has expressed an

25   opinion, however, does not mean that you must accept

1       that opinion.  The same as with any other witness,

2       it's up to you to decide whether you believe that

3       witness and whether you will rely on that witness's

4       testimony.

5              You will note that the indictment charges that

6       the offense was committed on or about a certain

7       date.  The government does not have to prove with

8       certainty the exact date of the alleged offense.  It

9       is sufficient if the government proves beyond a

10      reasonable doubt that the offense was committed on a

11      date reasonably near the date alleged.

12             The term "knowingly," as that term word is

13      used in these instructions and in the indictment,

14      means that the act was done voluntarily and

15      intentionally, and not because of mistake or

16      accident.

17             The word "willfully," as that term is used in

18      the indictment and in these instructions, means that

19      the act was committed voluntarily and purposely,

20      with the specific intent to do something the law

21      forbids, that is, with bad purpose, either to

22      disobey or disregard the law.

23             I caution you, members of the jury, that you

24      are here to determine from the evidence in the case

25      whether the defendant is guilty or not guilty.  He

1       is on trial only for the specific offense alleged in

2       the indictment.

3            Also, the question of punishment should never

4       be considered by the jury in any way in deciding the

5       case.  If the defendant is convicted, the matter of

6       punishment is for the judge alone to determine at a

7       later time.

8            When the government offers testimony or

9       evidence that a defendant made a statement or

10      admission to someone after being arrested or

11      detained, the jury should consider the evidence

12      concerning that statement with caution and great

13      care.  It is for you to determine, first, whether

14      the defendant made the statement and, second, if so,

15      how much weight to give it.

16           In making these decisions, you should consider

17      all of the evidence about the statement, including

18      the circumstances under which the defendant may have

19      made it.

20           Title 18 of the United States Code, Section

21      2422(b) makes it a federal crime or offense for

22      anyone to use any facility of interstate or foreign

23      commerce, including transmissions by computer or the

24      internet, in this case, a telephone or computer with

25      access to the internet, to knowingly and wilfully

1    persuade, induce, entice or coerce anyone under 18

2    years of age to engage in any sexual activity for

3    which any person could be charged with a criminal

4    offense or attempts to do so.

5         In some cases, it is a crime for anyone to

6    attempt the commission of an offense, even though

7    the attempt fails and the intended offense is not

8    actually carried out or fully committed.  So in this

9    instance, the defendant is charged with attempting

10   to commit the offense of coercion, enticement or

11   inducement of a minor in violation of Section

12   2422(b) as alleged in Count One of the indictment.

13        The defendant can be found guilty of this

14   offense only if all of the following facts are

15   proven by the government beyond a reasonable doubt:

16   First, that the defendant knowingly used a facility

17   or means of interstate commerce in an attempt to

18   persuade, induce, entice or coerce any individual

19   under the age of 18 to engage in sexual activity as

20   charged; second, that the defendant believed that

21   such individual was less than 18 years of age;

22   third, that if the sexual activity had occurred, the

23   defendant could have been charged with a criminal

24   offense under the laws of the State of Florida;

25   fourth, that the defendant engaged in conduct which

1    constituted a substantial step toward the commission

2    of the crime and which strongly corroborates the

3    defendant's criminal intent; and, fifth, that the

4    defendant acted knowingly and willfully.

5         A substantial step means some important action

6    leading to the commission of a crime as

7    distinguished from some inconsequential or

8    unimportant act.  It must be something beyond mere

9    preparation.  It must be an act which, unless

10   frustrated by some condition or event, would have

11   resulted in the ordinary and likely course of things

12   in the commission of the crime being attempted.

13        It is not necessary for the government to

14   prove that the individual was, in fact, less than 18

15   years of age, but it is necessary for the government

16   to prove that the defendant believed such individual

17   to be under that age.

18        Also, it's not necessary for the government to

19   prove that the individual was actually persuaded or

20   induced or enticed or coerced to engage in sexual

21   activity.  It is necessary for the government to

22   prove beyond a reasonable doubt that the defendant

23   had the intent to persuade or to attempt to persuade

24   a minor to engage in sexual activity.

25        So the government must prove that if the

1    intended sexual activity had occurred, the defendant

2    could have been charged with a criminal offense

3    under the laws of the State of Florida.

4         It is not necessary for the government to

5    prove that the defendant communicated directly with

6    a minor or supposed minor.  It is sufficient for the

7    government to prove beyond a reasonable doubt that

8    the defendant attempted to induce, persuade, entice

9    or coerce a minor to engage in sexual activity

10   through communications with a purported parent of a

11   minor.

12        In that regard, I instruct you as a matter of

13   law that the following acts are crimes under Florida

14   law:  Namely, sexual battery of a child under

15   Florida Statute 794.005; lewd or lascivious battery

16   under Section 800.04(4) of the Florida statutes;

17   lewd or lascivious molestation under Section

18   800.04(5); and lewd or lascivious conduct under

19   Section 800.04(6) of the Florida statutes.

20        Sexual battery means oral, anal or vaginal

21   penetration by union with the sexual organ of

22   another, or the anal or vaginal penetration of

23   another by any other object under Florida law,

24   specifically Section 791.011(1)(h).

25        Lewd or lascivious battery on a child is

1       defined as a person who encourages, forces or

2       entices any person less than 16 years of age to

3       engage in sadomasochistic abuse, sexual bestiality,

4       prostitution or any other act involving sexual

5       activity.  A person who does that commits lewd or

6       lascivious battery under Florida Statute

7       800.04(4(b).

8           The statute provides under lewd or lascivious

9       molestation of a child that a person that

10      intentionally touches in a lewd or lascivious manner

11      the breast, genitals, genital area or buttocks, or

12      the clothing covering them of a person less than 16

13      years of age, or forces or entices a person under 16

14      years of age to so touch the perpetrator, commits a

15      lewd or lascivious molestation under Section

16      800.04(5)(a).

17          Under Section 800.04(6)(a), a person who

18      intentionally touches a person under 16 years of age

19      in a lewd or lascivious manner, or solicits a person

20      under 16 years of age to commit a lewd or lascivious

21      act commits lewd and lascivious conduct.

22          You do not need to find that all of the

23      proposed sexual activity, if engaged in, would

24      violate all of these laws.  You need find only that

25      the proposed sexual activity would violate any one

1        of these laws.

2             The internet is defined as a facility, means

3        and/or instrumentality of interstate commerce.   And

4        I should re-read that.   It's not a definition.   I

5        instruct you that the internet is a facility, means,

6        and/or instrumentality of interstate commerce.

7             The word "induce" can be defined in two ways.

8        It can be defined as to lead or move by influence or

9        persuasion, to prevail upon or, alternatively, to

10       stimulate the occurrence of, or cause.

11            In order to assist you in hearing the tape

12       recordings that were introduced in evidence, you

13       have been provided transcripts of those recordings

14       as a guide.   Remember, and I caution you, that what

15       was said at the time it was recorded is the real

16       evidence that you are to consider, not the

17       transcripts.

18            Consequently, if you find that what you heard

19       or could not hear conflicts with the transcripts,

20       you are to rely on what you heard and not on the

21       transcripts.

22            Any verdict that you reach in the jury room,

23       whether guilty or not guilty, must be unanimous.   In

24       other words, to return a verdict, you must all agree

25       to it.   Your deliberations will be conducted in

1    secret, and you will never have to explain your

2    verdict to anyone.

3         It is your duty as jurors to discuss the case

4    with one another in an effort to reach agreement, if

5    you can do so.  Each of you must decide the case for

6    yourself, but only after full consideration of the

7    evidence with the other members of the jury.

8         While you're discussing the case, don't

9    hesitate to reexamine your own opinions and change

10   your mind if you are convinced that you are wrong.

11   But do not give up your honest beliefs solely

12   because the others think differently or merely to

13   get the case over with.

14        Remember, in a very real way, you are judges,

15   judges of the facts.  Your only interest is to seek

16   the truth from the evidence in the case.

17        When you go to the jury room, you should first

18   select one of your number to act as your foreperson

19   who will preside over your deliberations and speak

20   for you in open court.

21        We have a verdict form which has been

22   prepared.  Let me go over that with you.  It

23   includes the name of the court, the style of the

24   case, the case number assigned by the clerk.  It

25   reads, verdict, number one, Count One of the

1    indictment.  As to the offense of using a facility

2    or means of interstate commerce to knowingly and

3    wilfully attempt to persuade, induce, entice or

4    coerce an individual who had not attained the age of

5    18 to engage in sexual activity for which any person

6    can be charged with a criminal offense, in violation

7    of Title 18 of United States Code, Section 2422(b),

8    we, the jury, find the defendant, Charles Jackson

9    Friedlander, guilty or not guilty.  So say we all,

10   signifying a unanimous verdict.  And you would fill

11   in the date and the foreperson would sign it.

12        Remember that the verdict that you reach must,

13   if guilty, be beyond a reasonable doubt, that is,

14   you must find the specific facts alleged in the

15   indictment to have been proven by the government

16   beyond a reasonable doubt.

17        If, during your deliberations, it is necessary

18   for you to communicate with me, the foreperson

19   should write down your communication, initial it and

20   put the time, knock on the jury room door.  After I

21   have conferred with counsel, I will attempt to

22   answer your question.

23        A couple of words of caution, however.  Make

24   sure your question is legible, and don't ask me

25   about the evidence.  I cannot comment on the

1   evidence.  That is your decision.  I cannot

2   participate in any way in your resolution of the

3   facts.

4        But if you find that, for example, a specific

5   word or term in the instructions is not defined to

6   your satisfaction, that might be an appropriate

7   question.

8        Before you start sending questions to me,

9   however, read through the instructions.  I think you

10   will find, if you read them carefully, any questions

11   you have about the applicable law will be answered.

12        You'll see that the instructions are formatted

13   in a sequence to assist you in your deliberations.

14   There are some preliminary questions I've read to

15   you about how you are to deliberate, how you are to

16   consider the evidence, then the definitions and the

17   law applicable to the case are set forth and then,

18   of course, the definitions and law applicable to the

19   case with regard to the Florida statutes are set

20   forth.

21        There is no time limit or requirement in your

22   deliberations.  You should deliberate for as long as

23   necessary to reach a unanimous verdict.  If we reach

24   the point about 11:15 or so, I will have the clerk

25   order lunch for you so that you are not concerned

1       about that.

2           If you reach a point in the day when the

3       foreperson decides you should take a break and

4       return on Monday to finish your deliberations, that

5       is the foreperson's prerogative.  I will not

6       participate in that other than to inquire as to your

7       intentions, if it gets late in the day.  But, again,

8       the time of day should have no bearing on your

9       verdict.  Remember, you are judges.

10          Let me confer briefly with counsel about the

11      instructions and the verdict form to make sure

12      there's no concerns, and the redacted indictment,

13      Madam Clerk.

14          (At side bar, on the record.)

15          THE COURT:  Here's the verdict form.  Look at

16      it to make sure there's no objections, other than

17      previously stated, of course.  This would be the

18      redacted indictment.  The clerk will make a copy of

19      that.  She's cut and pasted it, of course.

20          MR. TRAGOS:  Your Honor -- Your Honor, is the

21      Court going to -- I don't know if the Court's -- I

22      don't remember the policy, but does the Court leave

23      the state attorney's signatures on there?

24          THE COURT:  You mean the U.S. attorney?  Not

25      necessarily.  Why don't we take that out.

```
 1            MS. KAISER:  That's fine.

 2            THE COURT:  By the way, there's a forfeiture

 3    provision in the indictment.  You need to confer

 4    with your client and notify me as soon as the jury

 5    goes out what his intentions are concerning

 6    forfeiture, if he wants a jury determination of that

 7    or not.  And if he's going to waive a jury trial, it

 8    needs to be in writing on the record.

 9            MR. TRAGOS:  Okay.

10            THE COURT:  Bifurcation, in other words.  If

11    the jury comes back guilty, we would then go into a

12    forfeiture proceeding.  I don't recall what you did

13    last time, honestly.  It doesn't matter because this

14    is a new trial.

15            MR. TRAGOS:  So we're going to take the

16    state -- I mean, the U.S. attorney stuff off.

17            COURTROOM DEPUTY CLERK:  Yeah, I'll take that

18    off.

19            THE COURT:  As to the instructions, any

20    objection to the manner in which they were read or

21    any new instructions requested?  All previous

22    objections and requests are deemed renewed, same

23    rulings.

24            MR. TRAGOS:  The defense has no objections.

25            MS. KAISER:  The United States has no
```

1    objections.  The Court left out one word or two

2    words on page three.  When you read the sentence

3    that says "the indictment or formal charge against

4    the defendant is not evidence," you left out, "of

5    guilt."  So I have no objections, but I just wanted

6    to bring that to the defense's attention.

7          THE COURT:  You're right.  I did not say that.

8    I said that about 15 times in this case, as did

9    Mr. Tragos during closing.  So if you want me to

10    correct that, I'll be happy to.

11          MR. TRAGOS:  I think the Court should correct

12    that.

13          THE COURT:  All right.  I'll just remind them

14    once again it's not evidence of guilt.  All right.

15    This is the copy I will send back.

16          (Brief pause.)

17          MR. TRAGOS:  That's fine.

18          MS. KAISER:  It's fine.

19          THE COURT:  We also have the matter of the

20    alternate juror.  Absent any other objection, it

21    would be the thirteenth juror, the young lady in the

22    upper row, far right.  I don't remember her name off

23    the top of my head, but I need to excuse her before

24    the jury begins deliberations.  Any objection to

25    that?

1          MR. TRAGOS:  No objection.

2          MS. KAISER:  No objection.

3          THE COURT:  All right.  Thank you.

4          (End of side bar discussion.)

5          THE COURT:  The clerk is making a copy of the

6     indictment.  I referred to it as a redacted

7     indictment because there are certain administrative

8     aspects of any indictment that do not concern you.

9     So she's making a copy of that at this time.

10         Remember, that the indictment against any

11    defendant is not evidence of guilt.  It's the formal

12    accusation.

13         We have reached the point in the trial when I

14    have to determine which of you will not be

15    deliberating.  Ms. Flores, you are the odd person

16    out.  But before you leave, let me thank you for

17    your patient and attentive participation in the

18    trial.  If one of your co-jurors is not able to

19    complete deliberations, the law provides that I can

20    bring you back in and instruct the jury to begin

21    their deliberations anew.

22         So while I'm going to excuse you, remember

23    that you are subject to being recalled.  Therefore,

24    you should not discuss the case or allow it to be

25    discussed in your presence.  And maintain the same

1        behavior that I've indicated to all of the jurors,

2        not to be exposed to anything about the case on the

3        internet or in the news or anything of that nature.

4        Do you have anything in the jury room you need to

5        get?

6               JUROR:  (Moves head from side to side.)

7               THE COURT:  Why don't you go ahead and get

8        that now before the jury begins its deliberations.

9        Here's the verdict form.

10              If any of you have any particular dietary

11       needs, if you'll just let the court security officer

12       know, Anne can make sure that the lunch

13       accommodates.  Typically the sandwich tray is both

14       vegetarian and otherwise, if that's a concern.  I

15       don't recall if they have any type of salad; some

16       pickles and things?

17              COURTROOM DEPUTY CLERK:  Not vegetarian.  They

18       have salads and --

19              THE COURT:  Aren't there some sandwiches

20       without meat?

21              COURTROOM DEPUTY CLERK:  Usually tuna or

22       chicken.

23              THE COURT:  Tuna or chicken?  That's fine.

24       All right.  Chicken salad, tuna salad.

25              COURTROOM DEPUTY CLERK:  That's not

1    vegetarian.

2         THE COURT:  That's not vegetarian.  So if you

3    need something like that, let him know so we can

4    make that special request.

5         Do not begin your discussions until Ms. Ohle

6    tells you you've got the evidence and all you need.

7    She will simply say you've got everything you need,

8    and then you would select your foreperson and begin

9    your discussions.  With that, you are excused.

10        COURTROOM SECURITY OFFICER:  Rise for the

11   jury.

12        (Jury out at 9:59 AM.)

13        THE COURT:  Mr. Tragos?

14        MR. TRAGOS:  Your Honor, on the forfeiture

15   issue the Court asked us about?

16        THE COURT:  Yes, sir.

17        MR. TRAGOS:  Could we tell the Court that

18   after the verdict, because Adelaide Few, the

19   government's forfeiture lawyer, is the one that we

20   have to deal with on that, and she's not here.  So

21   could we just wait until the verdict and give the

22   Court our decision then, just not excuse the jury?

23        THE COURT:  Well, no.  I would like to know

24   ahead of that time.  But, certainly, you don't have

25   to tell me right this moment.  If you need to confer

```
 1    with her, you've got time to do that.  But I need to

 2    know before this jury comes back.  I can't be

 3    scrambling.  And the government needs to be prepared

 4    with jury instructions.  So I would say let them

 5    know by -- is 30 minutes enough time to confer?

 6          MR. TRAGOS:  I don't know.  It's Adelaide.  I

 7    mean, I'm here.  I don't know.

 8          THE COURT:  I don't care about Ms. Few.  I've

 9    got a prosecutor in this courtroom.  That's who I'm

10    dealing with.

11          MS. KAISER:  Your Honor --

12          THE COURT:  I'm not being flippant, but I'm

13    not going to wait on lawyers to show up.

14          What's your position, Ms. Kaiser?

15          MS. KAISER:  I believe Ms. Few submitted the

16    government's jury instructions for the forfeiture.

17          THE COURT:  I hope they are the pattern

18    instructions.  Because last time she did it, they

19    were from Devitt and Blackmar or some place.  That

20    was a couple years ago, now, in fairness to her, but

21    I haven't seen them.

22          (Brief pause.)

23          MR. TRAGOS:  Your Honor, I --

24          THE COURT REPORTER:  I'm sorry.  I can't hear

25    you, Mr. Tragos.  The mic isn't working.
```

1          MR. TRAGOS:  You can't hear me still?

2          THE COURT:  The mics were turned off.

3          MR. TRAGOS:  Oh, oh.

4          THE COURT:  Go ahead, sir.

5          MR. TRAGOS:  The assistant and I may have just

6     worked this out and we may not have a problem we

7     need the jury instructions for.

8          We're in agreement that, if it should be a

9     guilty verdict, items one and two would be forfeited

10    and the remaining items would be returned to the

11    defendant.

12         THE COURT:  Ms. Kaiser?

13         MS. KAISER:  That's correct, Your Honor.  I --

14         THE COURT:  So items three, four, five, six

15    and seven would be returned to the defendant?

16         MR. TRAGOS:  Correct.

17         THE COURT:  If that is a contingent agreement,

18    if you will, and the defendant is willing to waive

19    his right to a jury determination, that needs to be

20    done in writing.  We do have a copy of the form that

21    was used before, Mr. Tragos.  I don't see any reason

22    why you couldn't simply use this copy, date it

23    and -- without signatures.

24         COURTROOM DEPUTY CLERK:  Yes, sir.

25         THE COURT:  All right.  We'll do that.  And I

1     will say that Docket 203, for purposes of the

2     record, the instructions submitted by Ms. Few do

3     seem to be adequate and consistent with the Eleventh

4     Circuit pattern instruction on forfeiture.  But if

5     they're not necessary, of course, that's moot.  But

6     I thank the government for submitting those,

7     consistent with the Eleventh Circuit pattern

8     instructions.

9          Mr. Friedlander, you've heard Mr. Tragos

10    advise the Court that the defense has reached an

11    agreement with the government whereby, if there's a

12    conviction, you would forfeit the Gateway computer

13    and the Dell laptop.  And in exchange, the other

14    remaining items in the indictment, the memory card,

15    the disc, the camera, floppy disc and a Hewlett

16    Packard camera would be returned to you.  Is that

17    your agreement, as well, sir?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  You understand that you're

20    entitled to -- if there's a conviction, to a jury

21    determination of forfeiture as opposed to the judge?

22    In other words, the jury would be making the

23    decisions on forfeiture as alleged in the

24    indictment, not me.  You're entitled to that.  Do

25    you understand?

1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  But you are willing to waive that

3     and agree with the government that you forfeit the

4     Gateway desktop and the Dell laptop and, in

5     exchange, you would receive the other items back?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  All right.  It does require, sir,

8     that you waive that right to a jury determination in

9     writing.  We have a form waiver I'll hand down to

10    the clerk.  Please review it with Mr. Tragos or

11    Mr. Sartes.  Make sure you understand it before you

12    sign it.

13          (Brief pause.)

14          THE COURT:  Mr. Friedlander, I have before me

15    a waiver of forfeiture before a jury, purportedly

16    executed by you, Mr. Tragos and Ms. Kaiser, for the

17    government.  Is this, in fact, your signature and

18    your waiver?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Do you have any questions about

21    that, sir?

22          THE DEFENDANT:  No, I don't.

23          THE COURT:  All right.  I will approve the

24    waiver, consistent with the agreement.  And, again,

25    this is all contingent upon a guilty verdict.  If

1      there's a not-guilty verdict, of course, I presume,

2      and let me ask counsel.  If there's a not-guilty

3      verdict, there's no forfeiture; correct?

4              MR. TRAGOS:  Correct.

5              MS. KAISER:  Well --

6              THE COURT:  I don't think there would be a

7      basis for forfeiture if there's a not-guilty

8      verdict.

9              MS. KAISER:  I believe the computers contained

10     other obscene materials, and I think they contain

11     contraband and couldn't be returned to the

12     defendant.

13             MR. TRAGOS:  Your Honor, if I remember the

14     testimony correctly, they said there was nothing

15     illegal on those computers.

16             THE COURT:  That's what I heard.

17             MS. KAISER:  I believe --

18             THE COURT:  Is this a matter we can take up

19     after the verdict?

20             MS. KAISER:  Yes.

21             THE COURT:  Mr. Tragos?

22             MR. TRAGOS:  Yes.

23             THE COURT:  All right.  Madam Clerk, if you'll

24     file the waiver.

25             Counsel, we'll be in recess.  Please be within

1     ten minutes in the event there's a question from the

2     jury.   Thank you.

3            COURTROOM SECURITY OFFICER:   All rise.

4            (Recess was taken from 10:10 until 10:49 AM.)

5            (Back on the record.)

6            COURTROOM SECURITY OFFICER:   All rise.   This

7     Honorable Court is again in session.

8            THE COURT:   We received a note from the jury

9     at 10:28.   They have reached a verdict, signed by

10    Mr. Taylor as the foreperson.   We are all present.

11    Bring the jury in, please.

12            COURTROOM SECURITY OFFICER:   Rise for the

13    jury.

14            (Jury in at 10:49 AM.)

15            THE COURT:   Thank you.   Be seated.

16            Mr. Taylor, has the jury reached a verdict?

17            FOREPERSON:   Yes, we have, Your Honor.

18            THE COURT:   If you'll hand it to the court

19    security officer, please, sir.   Thank you, sir.

20            Madam Clerk, if you'll please publish the

21    verdict.

22            COURTROOM DEPUTY CLERK:   Case Number 8:08,

23    criminal, 318, Tampa, 27-TGW, United States of

24    America versus Charles Jackson Friedlander.

25    Verdict.   Number one.   Count One of the indictment.

1       As to the offense of using a facility or means of

2       interstate commerce to knowingly and wilfully

3       attempt to persuade, induce, entice or coerce an

4       individual who had not attained the age of 18 to

5       engage in sexual activity for which any person can

6       be charged with a criminal offense, in violation of

7       18 USC Section 2422(b), we, the jury, find the

8       defendant, Charles Jacks Friedlander, guilty.  So

9       say we all this 27th day of March 2009.  Glenn

10      Taylor, foreperson.

11              THE COURT:  Please poll the jury.

12              COURTROOM DEPUTY CLERK:  Mary Thompson, is

13      this your verdict?

14              JUROR 412:  Yes.

15              COURTROOM DEPUTY CLERK:  Bonnie Pedersen, is

16      this your verdict?

17              JUROR 331:  Yes.

18              COURTROOM DEPUTY CLERK:  Susan Harris, is this

19      your verdict?

20              JUROR 343:  Yes.

21              COURTROOM DEPUTY CLERK:  Jose Martinez, is

22      this your verdict?

23              JUROR 294:  Yes.

24              COURTROOM DEPUTY CLERK:  Glenn Taylor, is this

25      your verdict?

1              JUROR 286:  Yes.

2              COURTROOM DEPUTY CLERK:  Dalila Coats, is this

3     your verdict?

4              JUROR 303:  Yes.

5              COURTROOM DEPUTY CLERK:  Araceli Perez, is

6     this your verdict?

7              JUROR 277:  Yes.

8              COURTROOM DEPUTY CLERK:  Ryan Dorey, is this

9     your verdict?

10             JUROR 402:  Yes.

11             COURTROOM DEPUTY CLERK:  Ernest Lisi, is this

12    your verdict?

13             JUROR 395:  Yes.

14             COURTROOM DEPUTY CLERK:  Joann Baker, is this

15    your verdict?

16             JUROR 257:  Yes.

17             COURTROOM DEPUTY CLERK:  Gregory Laney, is

18    this your verdict?

19             JUROR 350:  Yes.

20             COURTROOM DEPUTY CLERK:  Oh, I'm sorry.

21    Anthony Neal Marco, is this your verdict?

22             JUROR 362:  Yes.

23             COURTROOM DEPUTY CLERK:  Thank you.

24             THE COURT:  Thank you, Madam Clerk.  Thank

25    you, members of the jury, for your participation in

1       our criminal justice system.  I hope the experience,

2       in hindsight, will be a positive one to reflect on.

3               Jury service is never pleasant.  Sometimes

4       it's very challenging and difficult.  And we

5       appreciate, most importantly, your attentiveness

6       during this trial and the fact that you performed

7       your duty unselfishly, consistent with the rules and

8       the orders that I have given you.

9               You are free to go about your business without

10      discussing this case again.  No one can address you

11      or ask you or approach you about your verdict

12      without an order from me.

13              On the other hand, if you choose to discuss

14      your thoughts about the case with the lawyers, that

15      is entirely up to you.  If you choose to do so,

16      please be mindful of the fact that your fellow

17      jurors participated in the deliberations in secret,

18      so to speak, and you should, of course, respect that

19      process.

20              Thank you.  You are discharged from any

21      further jury service.  You are excused.  Thank you.

22              COURTROOM SECURITY OFFICER:  Rise for the

23      jury.

24              (Jury out at 11:05 AM.)

25              THE COURT:  The jury, having returned its

1    verdict of guilty, I do hereby adjudicate the

2    defendant guilty of the offense charged in Count One

3    of the indictment.  We need a sentencing date, Madam

4    Clerk.

5         COURTROOM DEPUTY CLERK:  Your Honor, June 29th

6    at 3:00 PM.

7         THE COURT:  Does counsel know of any conflicts

8    at this time?

9         MR. TRAGOS:  Unfortunately, my calendar is in

10   my Blackberry.  What day of the week is that?

11        COURTROOM DEPUTY CLERK:  It's a Monday.

12        THE COURT:  I'll go ahead and set it

13   provisionally that you won't have any conflicts.

14        Mr. Tragos, if you'll make contact or, you,

15   Mr. Sartes, with probation to arrange the initial

16   interview.  That probably already occurred.

17        MR. SARTES:  It has, Your Honor.

18        THE COURT:  But they'll need to update that so

19   that that process is not delayed.

20        Is there anything else we can address here

21   today, Mr. Tragos?

22        MR. TRAGOS:  Yes, Your Honor.  We would

23   request 30 days for a post-trial motion, such as a

24   motion for new trial.

25        THE COURT:  Ms. Kaiser?

1          MS. KAISER:  Your Honor, I --

2          THE COURT:  Any objection to the extension?

3          MS. KAISER:  No, Your Honor.

4          THE COURT:  All right.  Thirty days.  Thank

5     you.  We'll be in recess.

6          The defendant is remanded to the custody of

7     the United States Marshal to await sentencing.

8          (Proceedings concluded at 11:07 AM.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        C E R T I F I C A T E

2

3     STATE OF FLORIDA              )

4     COUNTY OF HILLSBOROUGH   )

5         I, Linda Starr, RPR, Official Court Reporter for

6     the United States District Court, Middle District,

7     Tampa Division,

8         DO HEREBY CERTIFY, that I was authorized to and

9     did, through use of Computer Aided Transcription,

10    report in machine shorthand the proceedings and

11    evidence in the above-styled cause, as stated in the

12    caption hereto, and that the foregoing pages,

13    numbered 1 through 47, inclusive, constitute a true

14    and correct transcription of my machine shorthand

15    report of said proceedings and evidence.

16        IN WITNESS WHEREOF, I have hereunto set my hand in

17    the City of Tampa, County of Hillsborough, State of

18    Florida, this 13th day of September 2009.

19

20

21            _____
                    */s/ Linda Starr*
              Linda Starr, RPR, Official Court Reporter
22

23

24

25