IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| VS. | No. 8:08 CR 318 |
| CHARLES JACKSON FRIEDLANDER, | MOTION FOR COMPASSIONATE RELEASE |
| Defendant | |

The defendant, Charles Jackson Friedlander (hereinafter Dr. Friedlander), by his counsel, respectfully shows the Court pursuant to the First Step Act of December 21, 2018, the Second Chance Act of 2008, 34 U.S.C. 60541, et seq., the Second Chance Reauthorization Act of 2018, also enacted December 21, 2018, and under precedent set by *U.S. v Feucht*, 2020 WL 2781600 (S.D. Fla., May 28, 2020) that:

1. Dr. Friedlander is requesting this Court to grant an expedited compassionate release for extraordinary and compelling reasons as provided by law to include the First Step Act 18 U.S.C. 3582(c)(1)(A)(i). This Honorable Court has the inherent authority to provide such relief prior to all administrative remedies being exhausted as explained in <u>*U.S. v Feucht*, 2020 WL 2781600 (S.D. Fla., May 28, 2020).</u> This is especially so, since the infection rate in Butner FCI Low is out of control and has increased by 280% in 3 days (from 159 active infections to 400 active infections).

PROCEDURAL BACKGROUND

2. Dr. Friedlander was sentenced by this Court to a term of 360 months on July 21, 2009 for violation of 18 U.S.C. 2422(b) which makes it unlawful to persuade, induce, entice or coerce any individual under 18. The crime for which Dr. Friedlander was convicted did not include an active victim, was not a result of any violent action and did not involve interstate travel.

3. Dr. Friedlander is now in BOP custody at Butner FCI Low, North Carolina.

4. As of June 5, 2020, with BOP good time, he will have served at least 154 months.

5. Dr. Friedlander just turned 90 on May 28, 2020.

1

6. On June 27, 2019, with the help and guidance of Attorney James Craven, Dr. Friedlander moved this Court to grant Compassionate Release (Doc.328). That Motion was denied on August 14, 2019 (Doc.339). This Court's prior denial of compassionate release was based mostly on Dr. Friedlander's failure to exhaust his administrative remedies through the BOP system. Id. Currently, that decision is on appeal with the 11th Circuit. (Doc.340) and there is also a current Amended Motion for Bond Release before this Court pending the outcome of that appeal. (Doc.344).

7. Coordinated efforts are currently being made to again begin the process of requesting compassionate release through the administrative remedies provided through the BOP system based on the COVID-19 pandemic. However, considering the extreme infection rate and percentage of infections at the Butner FCI Low (280% increase in the last 3 days), the timing required to exhaust those remedies is assuredly a death sentence for Dr. Friedlander, making those administrative remedies futile in saving his life.

## FACTUAL ISSUES FOR CONSIDERATION

8. The prior denial of compassionate release predated the current pandemic that this great nation is experiencing, and which is most serious for our elderly community and/or those with certain pre-existing health ailments. Dr. Friedlander falls under both of those categories to an extreme degree.

9. On March 26, 2020 and April 3, 2020, United States General Attorney Barr provided a memoranda for Director of Bureau Prisons with recommendations to allow prisoners, such as Dr. Friedlander, be considered for home confinement. *See Composite Exhibit A.*

10. Currently, the virus in Butner FCI Low, where Dr. Friedlander is being held, is out of control. On May 13, 2020, there were 22 prisoners and 3 staff with confirmed cases with 0 deaths in a portion of the Butner FCI Low. *See Ex. B (May 13, 2020 Butner Low Screenshot).* In just two and a half weeks, on June 1, 2020, Butner FCI Low had 137 prisoner and 6 staff infections with 4 deaths *See Ex. C (June 1, 2020 Butner Low*

*Screenshot)*. Just 2 days after that, on June 3, 2020 Butner FCI Low had the third highest amount of infections in the country with 367 inmates and 6 staff infected with 6 inmates and 1 staff dead. *See Ex. D (June 3, 2020 Butner Low Screenshot).* Just 1 day after that, on June 4, 2020 Butner FCI Low had 393 inmates and 7 staff infected with 8 inmates and 1 staff dead. *See Ex. E (June 4, 2020 Butner Low Screenshot).* That means that, at the time of this Motion, the infection went from 25 people to 400 and that isn't including those that have recovered. Even more concerning is that it went from 159 to 400 in just 3 days. **That's an increase of 280% in 3 days and 5 more deaths!!** The most up to date information can be obtained at https://www.bop.gov/coronavirus/index.jsp of which it states that the statistics are updated daily. Beyond just the active cases, 45 inmates and 6 staff have recovered from their infections for a total of 451 infections in Butner FCI Low. That is roughly 36% infection rate within Butner FCI Low without considering that the entire 1262 inmate population is not being tracked. Compared to the normal population of the United States with less than half of a single percent of infection rate, there is 70 times more chance of contracting the virus at Butner FCI Low as opposed to the non-incarcerated citizen of the United States.

11. Meaningful social distancing there is impossible, and alcohol-based sanitizer, strongly recommended by the CDC, is unavailable. Soap is in short supply. Beyond all of that, it is readily apparent that Butner FCI Low does not have a handle on containing this virus.

12. Charles Friedlander previously submitted very serious medical conditions in his prior Motion for Compassionate Release, documented by his BOP medical records, and by records of the Duke University Medical Center, where the BOP has sent him for needed outside care (Doc.328):

    - Brittle Type II Diabetes Mellitus, very difficult to control, with unpredictable sharp changes in blood glucose levels without an obvious

cause, together with greater likelihood and frequency of ketoacidosis and/or severe hypoglycemia.

- Total Erectile Dysfunction at least since 2008, due to brittle diabetes
- Osteoarthritis
- Extreme Fatigue
- Chronic Kidney Disease-Stage 3
- GERD (Gastroesophageal Reflux Disease)
- Hypertension
- Prostate carcinoma/Prostate Hypertrophy
- Hearing loss (hearing aids)
- Sciatica
- Gout
- Multi basal cell carcinomas
- Vincent's Stomatitis in mouth/gums (Acute Infectious Gingivostomatitis)
- Elevated Cholesterol
- Right Branch Bundle Block, a delay/blockage along the pathway that electric impulses travel to make the heartbeat, in this case the right side of the ventricles.
- Diabetic Retinopathy, the most common cause of vision loss in diabetes, change to retinal blood vessels causing them to bleed or leak fluid, distorting vision. This is a leading cause of blindness.
- Severe Clinical Depression
- Elevated Anxiety Disorder
- Degenerative Back Disease

13. Dr. Friedlander has been wheelchair bound since 2012 and can only walk a very short distance, for example from his wheelchair to his bed. And suffice it to say he is frail, weak and needs assistant with daily care. Since May 1, 2019 he has fallen almost daily when he walks. His BOP release date is on January 29, 2035, which will never

be reached if he is to stay in BOP with the pandemic as rampant as it is in Butner Low.

14. Contained in Doc.328 is a copy of a November 18, 2018 psychosexual evaluation of Charles Friedlander done by Dr. Joseph J. Plaud in Boston. This was attached to Dr. Friedlander's first Motion for Compassionate Release before this Court. *Id.* Dr. Plaud concluded that:

    a. Dr. Friedlander has not been a prior sexual offense recidivist, he has no contact-based victims; it is highly likely that years ago he engaged in sexualized fantasizing. His clinical presentation is inconsistent with a paraphilia diagnosis.

    b. At the time of evaluation Dr. Friedlander was 88 years old, that is within an age associated with the absolute lowest rates of sexual offense recidivism and he is now 2 years older.

    c. Dr. Friedlander does not have, in general, an antisocial lifestyle orientation, and given that he does not possess a paraphilia diagnosis, there is an insufficient foundation to conclude that Dr. Friedlander would be in a band of sexual offense risk considered high or likely.

    d. Comparatively speaking, Dr. Friedlander's statistical risk analysis places him in a very low risk band.

    e. There are unique interpersonal issues in Dr. Friedlander's social functioning, including what most accurately from a psychological perspective can be described as social inadequacies that formed a basis for his sexual offense adjudication.

    f. Dr. Friedlander is in an age and risk-range, given his current health and medical issues in which terms of compassionate release is clearly in my professional judgment the best course of action concerning both public safety and the welfare of Dr. Friedlander.

15. It is worth noting that Dr. Plaud is a nationally known sex offender specialist who has, on numerous occasions, served as an expert for the Government, for individuals, and for the Court, in proceedings under 18 U.S.C. 4248 in the District of Massachusetts and the Eastern District of North Carolina.
16. If released from BOP custody, Dr. Friedlander will be on supervised release for life.
17. The release plan is for Charles Friedlander to live with William Hayden at 501 North Clinton Street-Apt. 3102, Chicago, Illinois 60654, where friends and family live, and can assist him. He will have an adequate income and Social Security benefits, together with health insurance.

LEGAL ISSUES FOR CONSIDERATION

18. The First Step Act allows prisoners to move for compassionate release from prison when "extraordinary and compelling reasons" warrant such release. 18 U.S.C. 3582(c)(1)(A)(i).
19. This Honorable Court can rule without the exhaustion of administrative remedies, even if provided under statute. "Although § 3582(c)(1)(A) plainly imposes an administrative exhaustion requirement, the United States Supreme Court has held that, even in such circumstances, an exception exists where 'the interests of the individual weigh heavily against requiring administrative exhaustion.'" *Feucht*, 2020 WL 2781600 (citing and quoting *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992); *see also Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019) ("Even where exhaustion is seemingly mandated by statute ..., the requirement is not absolute."). "One such exception exists where 'requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action. Such prejudice may result, for example, from an unreasonable or indefinite timeframe for administrative action.'" *Feucht*, 2020 WL 2781600 (citing and quoting *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992).
20. Several other Federal District Courts have provided compassionate release to inmates of Federal Prisons, without exhaustion of the BOP administrative relief, and two of

those orders are provided as *Composite Ex. F* for this Court's review. *Comp. Ex. F (Orders in: U.S. v. Sawicz, U.S. Dist. Ct. E. Dist. N.Y., No: 08-cr-287 (Doc. 66)(Apr 10, 2020); U.S. v. Colvin, U.S. Dist. Ct. Dist. Conn., No: 3:19-cr-179 (Doc.38)(Apr 2,2020).*

21. Dr. Friedlander adopts and incorporates the well-reasoned judicial opinions of *Exhibit F*, based on the law, into the legal basis for compassionate release within this Motion and provides much of the law used in paragraphs below. More specifically, this court has the jurisdiction and authority to grant compassionate release without Dr. Friedlander exhausting his administrative remedies under the facts of this case.

22. "First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue." *Washington*, 925 F.3d at 118. "[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile." *Id.* at 120. Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief," including situations where "the relief the agency might provide could, because of undue delay, become inadequate." Id. at 119-20. Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." Id. at 119.

23. Section 3582(c)(1)(A) permits a sentence reduction upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Section IBI.13 of the Sentencing Guidelines further explains that a sentence reduction under S 3582 (c)(I)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. S 35536," that "Extraordinary and compelling reasons warrant the reduction; . . .(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. S 3142(g); and (3) The reduction is consistent with the policy statement.

24. Application Note 1 to the Guidelines enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including

certain medical conditions, advanced age, certain family circumstances, or some "other" reason. The Note specifies that "a serious physical or medical condition…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release.

25. Further, 18 U.S.C. 2422(b), in which Dr. Friedlander was sentenced in 2009, is <u>not</u> included in the Categorization of Offenses set out in BOP P.S. 5162.05 that would disqualify Dr. Friedlander from compassionate release. It must be noted that the criminal allegations that ended with conviction of Dr. Friedlander did not include an actual victim and Dr. Friedlander did not conduct any acts upon a person.

## APPLICATION OF LAW TO FACTS

26. In <u>Feucht</u>, the Court ordered compassionate release, without exhaustion of administrative remedies through BOP, due to the inmate having Type 2 diabetes, hypothyroidism, hypertension, hyperlipidemia, obesity, and edema as a risk for susceptibility of death due to COVID-19. Dr. Friedlander has the same issues (outside of those dealing with obesity) along with many more ailments that are even more serious in nature. 2020 WL 2781600.

27. In <u>Sawicz</u>, the Court ordered compassionate release, without exhaustion of administrative remedies through BOP, due to the inmate having hypertension as a risk for susceptibility of death due to COVID-19. *Ex. E.* Dr. Friedlander is diagnosed with a litany of serious ailments to include hypertension. Doc. 328.

28. In Colvin, the Court ordered compassionate release, without exhaustion of administrative remedies through BOP, due to the inmate having type II diabetes as a risk for susceptibility of death due to COVID-19. *Ex. E.* Dr. Friedlander is diagnosed with a litany of serious ailments to include brittle type II diabetes. Doc. 328.

29. All three exceptions provided by law apply to allow waiver of the exhaustion requirement to Dr. Friedlander's request. First, if Dr. Friedlander contracts COVID-

19 before his appeals are exhausted, that undue delay might cause him to endure precisely the "catastrophic health consequences" he now seeks to avoid. *See CDC Guidance as cited in Feucht.* Second, the exhaustion requirement likely renders BOP incapable of granting adequate relief, given the infection rate at Butner FCI Low, as Dr. Friedlander will likely contract COVID-19 by the time his appeals are exhausted. Third, Defendant would be subjected to undue prejudice—the heightened risk of severe illness and ultimate death—while attempting to exhaust his administrative procedure.

30. Simply put, Dr. Friedlander's long list of serious ailments combined with the COVID-19 virus qualifies as an extraordinary and compelling reason for compassionate release without exhausting the administrative remedies associated with BOP guidelines. The exhaustion of the administrative remedies by the BPO is at least 30 days. Within 30 days, based on the infection rate are Butner FCI Low, it will be too late for Dr. Friedlander. As mentioned above in 3 days 230 new inmates tested positive for COVID-19. There was a 280% increase in infections from June 1 to June 4. This is an emergency issue that can't wait for exhaustion of the administrative process that could take at least 30 days.

31. Charles Friedlander clearly meets the BOP standards, set out in Policy Statements 5050.49 and 5050.50 for Compassionate Release. He also meets the compassionate release criteria of 18 U.S.C 3580(c)(1)(A)(i) and Section 1B1.13, Federal Sentencing Guidelines.

32. As to recidivism or potential danger to the community, it is anticipated that, as happened before, the U.S. Attorney will argue that some of the ailments Dr. Friedlander has now, he had at the time of the crimes for which he was convicted. Although that may be true for some of those ailments, even a layperson understands that there is a huge difference between the effects of those ailments upon the abilities of a man from age 78 to 90. Further, COVID-19 did not exist at the time of the acts

that gave rise to his conviction and there were not specific rules of social distancing or the fear of imminent death from contracting the virus.

33. There is no chance of recidivism regarding the prior crimes for which Dr. Friedlander was convicted. *See unrefuted expert analysis of Dr. Plaud* (Doc. 328). Dr. Friedlander is now wheelchair bound, will be monitored under appropriate supervision by both authorities and his caregiver, cannot drive a normal motor vehicle and is overall very poor health. Further, due to the pandemic, Dr. Friedlander will have to take extra precautions, due to the virus, that will require very little, if any, exposure to the general public.

## CONCLUSION

34. This is exactly the type of case compassionate release was created by our legislature and the exact type of case in which the administrative remedies through BOP should be bypassed through the inherent authority of this Court. Dr. Friedlander is 90 years old and in extremely bad health. If he contracts this virus, that is running rampant in his facility, he will almost assuredly die. He received a 360-month term of which he has served a significant amount of that time. He did not receive a life sentence or a death sentence and it is not as if he will be out on the streets or have any chance of being a danger to the community.

WHEREFORE, pursuant to the First Step Act of December 21, 2018, Second Chance Act of 2008, 34. U.S.C. 60541 et seq, and the Second Chance Reauthorization Act of 2018, also enacted December 21, 2018, respectfully prays the Court:

1. For compassionate release from BOP custody, to live in Chicago, Illinois under the supervision of the USPO for the Northern District of Illinois for the term of supervised release in the judgment herein, under whatever constraints this Honorable Court deems proper.
2. For such other and further relief as the Court may deem just and equitable,

Respectfully submitted,

/s/ Joseph E. Parrish

Joseph E. Parrish  
Attorney for the Defendant Charles Friedlander  
Parrish & Goodman, PLLC  
915 North Franklin Street-Unit 2302  
Tampa, FL 33602  
(813)315-6535

<u>Of Counsel</u>
/s/ James B. Craven III
James B. Craven III
NC State Bar 997
Attorney for the Defendant Charles J. Friedlander
P.O. Box 1366
Durham, NC 27702
(919)688-8295
JBC64@MINDSPRING.COM

CERTIFICATE OF SERVICE

I have this day served Government counsel electronically:

Maria Chapa Lopez, Esquire
United States Attorney
400 North Tampa Street-Suite 3200
Tampa, FL 33602

This 5th day of June 2020.

/s/ Joseph E. Parrish  
Joseph E. Parrish