# EXHIBIT F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | **08-cr-287 (ARR)** |
| — against — | |
| | **Not for print or electronic publication** |
| WILLIAM SAWICZ, | |
| Defendant. | **Opinion & Order** |

ROSS, United States District Judge:

Before me is the defendant's motion for compassionate release pursuant to 18

U.S.C. § 3582(c)(1)(A)(i) because of the COVID-19 global pandemic and outbreak at the

Danbury Federal Correctional Institute ("Def.'s Mot.," ECF No. 62). The defendant asserts

that he is especially vulnerable to the threat of contracting a severe case of COVID-19

because he has hypertension, for which he takes prescribed Lisinopril and baby aspirin.[1]

Def.'s Mot. 2, 4. Accordingly, the defendant requests that I order his immediate release to

home confinement for a period of time to be followed by his already-imposed five-year

term of supervised release. Def.'s Mot. 1. The government opposes because the defendant

has not exhausted his administrative rights within the Bureau of Prisons. The defendant's

---

[1] Defense counsel has not been able to access the defendant's medical records within the
Bureau of Prisons. *See* Def.'s Mot. 4 n.7. Because the government does not contest that the
defendant suffers from hypertension and takes these medications, *see* Government
Response to Def.'s Mot. 2, ECF No. 64 ("Gov't Resp."), I rely on defense counsel's
representations as to the defendant's medical condition.

motion is granted, as set forth below.

On August 23, 2016, I sentenced the defendant to five years' imprisonment, to be followed by five years of supervised release, after the defendant violated the conditions of his term of supervised release by possessing child pornography. *See* Min. Entry, ECF No. 52. The defendant is currently imprisoned at FCI Danbury. The defendant asserts that he has received approval from his unit manager for transfer to a halfway house. Def.'s Mot. 3. The defendant further asserts that Probation has visited and approved his parents' home in Deer Park, New York for his reentry. *Id.*; *see also* Updates to Def.'s Mot. 1, ECF No. 63 ("Updates"). As of March 31, 2020, the Bureau of Prisons ("BOP") Residential Reentry Office was still processing the defendant's application for reentry. *See* Figueroa Email Def.'s Ex. B, ECF No. 62; Def.'s Mot. 3.

Under 18 U.S.C. § 3624(c)(2), a prisoner may be placed "in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). Accordingly, under normal circumstances, the defendant would be eligible for release to home confinement on August 26, 2020. *See* Gov't Resp. 1; Def.'s Mot. 3. However, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") expanded the maximum amount of time that a prisoner may spend in home confinement: "if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement . . . ." CARES Act § 12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020). Attorney General William Barr made the requisite "finding that emergency conditions are

2

materially affecting the functioning of the Bureau of Prisons" on April 3, 2020, thereby triggering the BOP's authority to expand the amount of time that a prisoner may spend in home confinement. Mem. for Director of BOP, Def.'s Ex. A at 1 (Apr. 3, 2020). In particular, the Attorney General acknowledged the "significant levels of infection" at FCI Danbury and instructed the Bureau to "move with dispatch . . . to move vulnerable inmates out of [this] institution[]." *Id.* Accordingly, on April 5, 2020, the defendant, through counsel, submitted a letter to the warden of FCI Danbury formally requesting transfer to home confinement. *See* Email Attaching Request for Transfer Def.'s Ex. C, ECF No. 62; Letter to Warden, ECF No. 61. On April 9, 2020, the defendant filed another letter with the warden, this time formally seeking compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). *See* Updates Ex. A, ECF No. 63. To date, the defendant has not received a response from the warden.

Separately from the statutory provisions regarding home confinement, the First Step Act allows prisoners to move for compassionate release from prison when "extraordinary and compelling reasons" warrant such release. 18 U.S.C. § 3582(c)(1)(A)(i). This statutory provision is the one under which the defendant moves before me now. There are four prerequisites to a court's granting compassionate release under the First Step Act. First, the defendant must have exhausted his administrative rights with the BOP. § 3582(c)(1)(A). Second, the court must find that "extraordinary and compelling reasons warrant" release. § 3582(c)(1)(A)(i). Third, the court must consider the factors set forth in § 3553(a). § 3582(c)(1)(A). Fourth, the court must find that release is consistent with the Sentencing Commission's policy statements. § 3582(c)(1)(A)(i).

A prisoner exhausts his administrative rights when the BOP fails to bring a motion for compassionate release on his behalf and he exercises all administrative rights to appeal, or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" § 3582(c)(1)(A). In this case, the defendant has not exhausted his administrative rights with the BOP, as he transmitted his requests for release to the warden of FCI Danbury on April 5, 2020 and April 9, 2020—fewer than thirty days ago. *See* Updates Ex. A, ECF No. 63; Def.'s Ex. C, ECF No. 62; Letter to Warden, ECF No. 61.

However, I waive the exhaustion requirement in this case. "Even where [administrative] exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). A court may waive an administrative exhaustion requirement "where [exhaustion] would be futile, . . . where the administrative process would be incapable of granting adequate relief . . . [or] where pursuing agency review would subject [the person seeking relief] to undue prejudice." *Id.* at 118–19 (citing *McCarthy v. Madigan*, 503 U.S. 140, 146–48 (1992), *superseded by statute on other grounds as recognized in Booth v. Churner*, 532 U.S. 731, 740 (2001)). "[U]ndue delay, if it in fact results in catastrophic health consequences," can justify waiving an administrative exhaustion requirement for any of those three reasons. *Id.* at 120–21.

The COVID-19 outbreak at FCI Danbury, combined with the fact that the defendant is at risk of suffering severe complications if he were to contract COVID-19 because of his hypertension, justifies waiver here. *See* Order at 7–8, *United States v. Zuckerman*, No. 16

4

Cr. 194 (AT) (S.D.N.Y. Apr. 3, 2020), ECF No. 116; *United States v. Colvin*, No. 3:19cr179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020); *United States v. Perez*, No. 17 Cr. 513-3 (AT), 2020 WL 1546422, at *3, *3 n.3 (S.D.N.Y. Apr. 1, 2020); Def.'s Ex. A at 1 (acknowledging "significant levels of [COVID-19] infection" at FCI Danbury). The delay that the defendant would experience if he had to wait for thirty days to expire before pursuing a motion for compassionate release in this court would put him at significant risk of suffering catastrophic health consequences. *See, e.g., Perez*, 2020 WL 1546422, at *3. In fact, given the COVID-19 outbreak at FCI Danbury, any delay at all puts the defendant at an increased risk.

Next, I find that extraordinary and compelling reasons warrant the defendant's release from prison. 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission has issued a Policy Statement that defines "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) ("USSG"); *see United States v. Ebbers*, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399 at *4 (S.D.N.Y. Jan. 8, 2020); *United States v. Bellamy*, No. 15-165(8) (JRT/LIB), 2019 WL 3340699, at *2 (D. Minn. July 25, 2019). While the defendant's hypertension does not place him squarely within any of the Policy Statement's definitions of "extraordinary and compelling reasons," *see* USSG § 1B1.13 cmt. n.1(A)–(D), the defendant asserts that the COVID-19 pandemic, combined with his particular vulnerability to complications from COVID-19 because of his hypertension, constitutes an "extraordinary and compelling reason" for his release. Def.'s Mot. 10–11. The government does not dispute this assertion, and I agree with the defendant that the risk of serious illness or death that he faces in prison constitutes an

extraordinary and compelling reason militating in favor of his release.[2]

The defendant's motion does not specifically speak to the § 3553(a) factors, which

I must consider in deciding whether to grant compassionate release. *See* § 3582(c)(1)(A).

Under § 3553(a), I must consider what is "sufficient, but not greater than necessary, to

comply with the purposes of [sentencing]." § 3553(a). In particular, I must consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) [the kinds of sentence and sentencing range provided for in the USSG]
(5) any pertinent [Sentencing Commission policy statement]
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

---

[2] District courts have taken various positions regarding the level of deference that they should afford to the Sentencing Commission's Policy Statement in assessing whether extraordinary and compelling reasons for release are present. *See Ebbers*, 2020 WL 91399, at *4 (deeming the Policy Statement "at least partly anachronistic" because it pre-dates the First Step Act but "nonetheless[] helpful in defining a vague standard"); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) (concluding that district court may make "independent assessment" of whether extraordinary and compelling reasons exist); *see also United States v. Young*, No. 2:00-cr-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("[T]he district courts themselves have the power to determine what constitute extraordinary and compelling reasons for compassionate release.").

*Id.* In considering these factors, I "should assess whether [they] outweigh the 'extraordinary and compelling reasons' warranting compassionate release[.]" *Ebbers*, 2020 WL 91399, at *7. While I acknowledge that possession of child pornography is a serious offense and that the defendant has already once violated the conditions of a term of supervised release, these considerations do not justify keeping the defendant in prison amidst an outbreak of a potentially deadly virus to which he is particularly vulnerable. Further militating in favor of the defendant's release is the fact that the defendant is less than five months away from the date on which he would be eligible for release to home confinement under normal circumstances. *See* 18 U.S.C. § 3624(c)(2); Def.'s Mot. 3. In addition, the government has not set forth any argument with respect to the § 3553(a) factors.

Finally, I must consider whether release is consistent with the Sentencing Commission's policy statements. *See* § 3582(c)(1)(A)(i). In particular, I must determine that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" USSG § 1B1.13(2). The § 3142(g) factors are largely duplicative of those in § 3553(a). *See* § 3142(g). Upon his release from prison, the defendant will quarantine himself at home with his parents; assuming that he complies with that directive—and I have no reason to believe that he would not—he would pose little, if any, risk to the public. *See* Def.'s Mot. 12–13. Further, neither the violation on which the defendant is currently serving his prison sentence nor the conduct involved in the underlying crime involved violence or physical contact with minors. Thus, I find that the

defendant does not pose such a danger to the public so as to outweigh the factors militating in favor of his release.

Thus, I grant the defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). It is hereby ordered that:

1. The motion by defendant WILLIAM SAWICZ, Reg. No.75670-053, for compassionate release is granted;

2. The defendant's prison sentence be and hereby is reduced to time served;

3. The warden of FCI DANBURY shall forthwith release from custody the person of defendant WILLIAM SAWICZ;

4. Defendant WILLIAM SAWICZ shall not spend 14 days in quarantine at FCI DANBURY prior to his release, but shall be released immediately upon the institution's receipt of this Order, and shall instead spend 14 days in quarantine at the place he shall reside;

5. Defendant WILLIAM SAWICZ shall be on supervised release status, with home confinement for a period of 6 months;

6. For that 6-month period and for 5 years thereafter, defendant WILLIAM SAWICZ shall abide by all the terms and conditions of supervised release that were previously imposed on him and are memorialized in his judgment of conviction. The defendant has consented to the re-imposition of all terms of supervised release that were previously imposed on him. *See* Def.'s Proposed Order 1, ECF No. 62-1. In addition, I find that Additional Supervised Release Term 4, imposed at his initial sentencing proceeding held on April 23, 2009, *see* J. in Criminal Case at 4, May 8,

2009, ECF No. 29, and Additional Supervised Release Term 3, imposed at his August 23, 2016 sentencing on his violation of supervised release, *see* J. in Criminal Case at 4, Aug. 26, 2016, ECF No. 54, are warranted. In addition to the defendant having consented to the re-imposition of the condition, I find that the defendant's interest in child pornography began with and developed from an initial interest in adult pornography. *See* Krueger Evaluation Def.'s Ex. C at 2, May 10, 2016, ECF No. 51; Krueger Evaluation Def.'s Ex. D at 2, Apr. 14, 2008, ECF No. 51. Thus, an adult pornography ban is designed to address a realistic danger of recidivism and is no greater than reasonably necessary to serve the sentencing factors;

7. Upon his release from FCI DANBURY, defendant WILLIAM SAWICZ shall proceed immediately to 29 Somerset Place, Deer Park, NY (the "Residence") where he shall reside during his term of home confinement and supervised release;

8. Defendant WILLIAM SAWICZ must notify the Probation Department for the Eastern District of New York upon his arrival at the Residence, and is directed to follow the instructions of the assigned probation officer, as well as the conditions of supervised release imposed at the time of his sentence;

9. For a period of 6 months from the date of his release from prison, defendant WILLIAM SAWICZ shall be under 24-hour home incarceration to be enforced by location monitoring, using specific technology to be determined by the Probation Department. The defendant may only leave the Residence for necessary medical services with advanced notification, and approval if time permits, from the Probation Department. All other leave from the Residence must be submitted

through defense counsel for the court's approval;

10. In addition, for the first 14 days of his term of home confinement, defendant WILLIAM SAWICZ shall remain in quarantine at the Residence, and shall be allowed no contact with any other person other than his parents, who live in the Residence, except for medical personnel in case of emergency;

11. The 48-month period of deferral of prosecution in case number 15-cr-443 will begin to run on the date of the defendant's release from FCI DANBURY in the instant case. Upon the defendant's release from FCI DANBURY in the instant case, the government will file a letter in case number 15-cr-443 informing me that the deferral period has begun. *See* Pretrial Diversion Agreement 1, No. 15-cr-443 ECF No. 49-1; Order Approving Pretrial Diversion Agreement, No. 15-cr-443 ECF No. 52; Def.'s Mot. 3 n.5;

12. Upon entry of this Order, defense counsel shall immediately contact Probation Officer Joanmarie Langone and coordinate with her to facilitate enforcement of the defendant's electronic monitoring and other release conditions; and

13. Although the court assumes that the Federal Defenders will notify the BOP of the issuance of this order, the court directs that the United States Attorney's Office for the Eastern District of New York formally notify the BOP so that this order can be put into effect as quickly as possible.

Dated:   April 10, 2020                    _____/s/_____
         Brooklyn, New York                Honorable Allyne R. Ross
                                           United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 3:19cr179 (JBA) |
| *v.* | |
| LATRICE COLVIN | April 2, 2020 |

## RULING GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

Defendant Latrice Colvin moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). (Emerg. Mot. for Compassionate Release [Doc. # 30].) The Government opposes. (Gov't Opp. [Doc. # 32].) The Court heard oral argument on this motion via teleconference on April 2, 2020. For the reasons that follow, Defendant's motion is granted.

### I. Background

Defendant was convicted by guilty plea of one count of mail fraud in violation of 18 U.S.C. § 1341. (Am. J. [Doc. # 29].) She was sentenced to a term of imprisonment of 30 days, followed by two years of supervised release, the first seven months of which shall be served in home detention. (*Id.*) Defendant self-surrendered to the BOP at its at FDC Philadelphia facility on March 16, 2020, leaving approximately eleven days of imprisonment remaining in her sentence as of the date of this ruling. (Emerg. Mot. at 2.)

Defendant suffers from Type II Diabetes. (Medical Records [Doc. # 35].) When not incarcerated, Defendant sees "medical professionals at Bridgeport Hospital who have treated her for her diabetes and high blood pressure, have seen her through a difficult pregnancy, and have performed surgery on her back," and thus "know her and can properly care for her." (Emerg. Mot. at 7.)

Although "COVID-19 is a new disease[,] . . . based on currently available information and clinical expertise," the Centers for Disease Control and Prevention list "[p]eople with diabetes" among the groups of "[p]eople who are at higher risk for severe illness" from COVID-19. CENTERS FOR DISEASE CONTROL AND PREVENTION, PEOPLE WHO ARE AT HIGHER RISK FOR

1

SEVERE ILLNESS ("CDC Guidance"), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited Apr. 2, 2020).

On March 27, 2020, Defendant "filed an administrative relief request with the Warden [of] FDC Philadelphia seeking compassionate release on the same grounds as" argued in her motion for compassionate release. (Emerg. Mot. at 1 n.1) She has not yet received any response to that request.

## II. Discussion

Defendant moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides,

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Thus there are two questions before the Court: first, whether Defendant should be excused from her administrative exhaustion requirement, and second, whether Defendant has demonstrated extraordinary and compelling reasons for a sentence reduction.

### A. Exhaustion Requirement

Section 3582(c)(1)(A) plainly imposes an exhaustion requirement which must be satisfied before a defendant may move the court for release. Defendant asks the Court to waive that requirement, arguing that it would be futile for her to seek to exhaust her administrative remedies or wait thirty days. (Emerg. Mot. at 1 n.1.) The Government argues that the Court must not consider Defendant's request because she has not satisfied the exhaustion requirement but fails to convincingly address the merits of Defendant's request for a waiver of that requirement.

"Even where exhaustion is seemingly mandated by statute . . . , the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). There are generally three bases for waiver of an exhaustion requirement. *See United States v. Perez*, No. 17cr513-3(AT), ECF No. 98 at 3-4 (S.D.N.Y. Apr. 1, 2020) (discussing exceptions to statutory exhaustion in context of motion for compassionate release during COVID-19 pandemic).

"First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue." *Washington*, 925 F.3d at 118. "[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile." *Id.* at 120. Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief," including situations where "the relief the agency might provide could, because of undue delay, become inadequate." Id. at 119-20. Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." Id. at 119

The Court concludes that all three exceptions to the exhaustion requirement apply to Defendant's request. First, if Defendant contracts COVID-19 before her appeals are exhausted, that undue delay might cause her to endure precisely the "catastrophic health consequences" she now seeks to avoid. *See* CDC Guidance. Second, given the brief duration of Defendant's remaining term of imprisonment, the exhaustion requirement likely renders BOP incapable of granting adequate relief, as her sentence will likely already have expired by the time her appeals are exhausted and would certainly already have expired by the time the thirty-day waiting period ends. Third, Defendant would be subjected to undue prejudice—the heightened risk of severe illness—while attempting to exhaust her appeals.

Thus, in light of the urgency of Defendant's request, the likelihood that she cannot exhaust her administrative appeals during her remaining eleven days of imprisonment, and the potential for serious health consequences, the Court waives the exhaustion requirement of Section 3582(c)(1)(A). *See Perez*, No. 17cr513-3(AT), ECF No. 98 at 4 (waiving exhaustion

requirement for sentence ending approximately three weeks after defendant's request to BOP); *United States v. Powell*, No. 1:94-cr-316(ESH), ECF No. 98 (D.D.C. Mar. 28, 2020) (finding administrative exhaustion futile, waiving § 3582(c)(1)(A)'s exhaustion requirement, and granting motion for compassionate release in light of COVID-19 pandemic and defendant's underlying health issues).

## B. Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Section 1B1.13 of the Sentencing Guidelines further explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that

> (1)(A) Extraordinary and compelling reasons warrant the reduction; . . .
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) The reduction is consistent with this policy statement.

Application Note 1 to that Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release.

Defendant argues that there are extraordinary and compelling reasons justifying her release because she "is at significant risk of contracting and developing severe complications from an exposure to COVID-19 due to her diabetes and high blood pressure." (Emerg. Mot.

4

at 1.) Thus, Defendant argues, release is warranted to avoid confinement in a "densely populated prison" where it will "inevitably [be] . . . more difficult to engage in the social distancing that will be critical to her health" during the COVID-19 pandemic. (*Id.* at 3.) Defendant asserts that "medical care is limited in federal pretrial detention centers," but if granted compassionate release, she would have "access to medical professionals at Bridgeport Hospital who have treated her for her diabetes and high blood pressure, have seen her through a difficult pregnancy, and have performed surgery on her back," and thus "know her and can properly care for her." (*Id.* at 7.)

The Government argues that Defendant has failed to demonstrate extraordinary and compelling reasons for her release because she "has not described any particular vulnerability to COVID-19 or explained any deficiency in the BOP's response to this public health situation." (Gov't Opp. at 3.) The Government clarified its position during the Court's teleconference with the parties, explaining that because Defendant's diabetes appears to be under control, the risk she faces while incarcerated is insufficient to justify her release. But contrary to the Government's suggestion, Defendant did describe a "particular vulnerability to COVID-19," (*id.*), when she explained that she "is particularly vulnerable to COVID-19 due to her diabetes and high blood pressure," putting her "at greater risk of complications," (Emerg. Mot. at 3). The CDC Guidance confirms Defendant's position, stating plainly that "[p]ersons with diabetes" face a "higher risk for severe illness" if they contract COVID-19. Moreover, the Bureau of Prisons itself has acknowledged that home confinement may be appropriate for certain "at-risk inmates" in order "to protect the health and safety of . . . people in our custody." (Ex. 1 (BOP Memo) to Emerg. Mot. [Doc. # 30-1] at 1.) Like Defendant, the BOP intends to rely upon "CDC guidance" to "make an assessment of the inmate's risk factors for severe COVID-19 illness." (*Id.* at 2.)

Thus the Court concludes that Defendant has demonstrated extraordinary and compelling reasons justifying her immediate release under Section 3582(c)(1)(A) and

U.S.S.G. § 1B1.13. She has diabetes, a "serious . . . medical condition," which substantially increases her risk of severe illness if she contracts COVID-19. *See United States v. Rodriguez,* No. 2:03-cr-271, Doc. # 135 at 2 (E.D.P.A. Apr. 1, 2020) (granting compassionate release because for a diabetic inmate, "nothing could be more extraordinary and compelling than this pandemic"). Defendant is "unable to provide self-care within the environment of" FDC Philadelphia in light of the ongoing and growing COVID-19 pandemic because she is unable to practice effective social distancing and hygiene to minimize her risk of exposure, and if she did develop complications, she would be unable to access her team of doctors at Bridgeport Hospital.

In light of the expectation that the COVID-19 pandemic will continue to grow and spread over the next several weeks, the Court concludes that the risks faced by Defendant will be minimized by her immediate release to home, where she will quarantine herself. Continued exposure to the large population of FDC Philadelphia over the coming weeks would impose upon Defendant additional, unnecessary health risks which can be minimized by her early release.

Separately, the Court concludes that Defendant is not a danger to the safety of any other person or to the community, and the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of her release.

6

**III. Conclusion**

For the foregoing reasons, Defendant's Emergency Motion for Compassionate Release [Doc. # 30] is GRANTED. Defendant's previously imposed sentence of 30 days imprisonment is reduced to time served, and she shall be immediately released from BOP custody. Upon her release, Defendant shall be subject to the additional conditions imposed in the Court's Order of Release, ([Doc. # 37]). All other aspects of Defendant's sentence remain unchanged.

IT IS SO ORDERED.

/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 2nd day of April 2020.

7